COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston,
           McCullough, Huff and Chafin
Argued at Richmond, Virginia


LATOYA MRYTRISE ROBERTSON

                                                          OPINION BY
v.      Record No. 0477-11-3                    JUDGE ROBERT J. HUMPHREYS
                                                       MARCH 19, 2013
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

        Gregory T. Casker for appellant.

        Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.


        Latoya Mrytrise Robertson ("Robertson") appealed her conviction of felony shoplifting,

in violation of Code § 18.2-103, arguing that the trial court erred by admitting two exhibits in

violation of the Confrontation Clause, and that without the wrongfully admitted exhibits, the

evidence was insufficient to sustain her conviction. A divided panel of this Court reversed the

judgment of the Circuit Court of Pittsylvania County ("trial court"). Robertson v.

Commonwealth, 60 Va. App. 688, 732 S.E.2d 30 (2012). By order of October 23, 2012, this

Court granted a petition for rehearing en banc thereby vacating the panel opinion. Robertson v.

Commonwealth, 61 Va. App. 65, 733 S.E.2d 155 (2012). For the following reasons, we affirm

the judgment of the trial court.

# I.  BACKGROUND

"On appeal, we view the facts established at trial in the 'light most favorable' to the prevailing party below, in this case the Commonwealth, and we grant to that party all fair inferences flowing from those facts."  Crawford v. Commonwealth, 55 Va. App. 457, 462 n.1, 686 S.E.2d 557, 559 n.1 (2009) (citations omitted).  In this light, the evidence established the following.

On the afternoon of January 7, 2010, Robertson purchased a large plastic storage bin and a drink from a Family Dollar store.  After paying for the bin and the drink, Robertson stood at the front of the store for a little while.  Then Robertson pushed the bin in a "buggy" up and down the aisles of the store.  Twenty minutes later, Robertson attempted to exit the store with the bin and the buggy.  Malinda Darling Holcomb ("Holcomb"), the store manager, stopped Robertson as she was almost out the door and said she needed to make sure the bin was still empty.  Robertson then laid her body over the bin and crossed her arms at the wrists.  Holcomb managed to flip open the lid of the bin, which was full of merchandise Robertson had not paid for.  Robertson left the store with a companion, and Holcomb directed a clerk to call 911.

Holcomb took the merchandise out of the bin and put it in the buggy and pushed the buggy over to a cash register.  Cindy Dishman ("Dishman"), an employee, was standing at the register and Holcomb was standing on the outside of the register, pulling items from the buggy and placing them on the counter.  Holcomb directed Dishman to scan each item into the register to determine the price and to write down each item with the price on a sheet of paper.  Holcomb testified that the list showed the "actual stuff that was in the [bin]."  Holcomb watched the prices come up on the register, and as she observed it the prices were correct as Dishman handwrote them on the piece of paper.  While Holcomb conceded on cross-examination that she probably did not verify that Dishman correctly recorded the price of every single item on the list, Holcomb

testified that she was able to see the prices of each item popping up on the register screen and she "pretty much [knew] most of those [were] correct." When counsel inquired about how Holcomb handled multiples of items, she testified, "how we did that is like I put it, if we had, if it was multiples we put [them] together and then she scanned the one to get the price and then she would write times two, or times four or whatever."[1] Holcomb then created a paper tape on an adding machine that added the prices from the handwritten list of prices she had Dishman create. Holcomb testified that the prices listed per item are the actual retail prices that the store charged for the items at the time. The trial court admitted the handwritten list of items and prices along with the adding machine tape as Commonwealth's Exhibit 1.

In April 2010, at the request of the investigating officer, Holcomb and Dishman created a voided receipt from the list of stolen merchandise in Exhibit 1. The voided receipt was entered into evidence as Exhibit 2. Holcomb testified that the total sum of the merchandise in Exhibit 2 was less than in Exhibit 1 because the prices of some of the items had been discounted and items that had been discontinued also rang up cheaper. In preparing Exhibit 2, Holcomb circled and marked certain items as "discontinued items." Both Holcomb and Dishman signed Exhibit 2.

Robertson's counsel objected to the introduction of both exhibits, arguing that "while [Holcomb] was present and involved, she was not checking to [ ] be sure that what was showing on the screen was being correctly [ ] set forth on the piece of paper" and therefore "the person who prepared the document is not present to be subject to cross examination." The trial court

---

[1] In addition to this testimony, we note that Holcomb repeatedly testified to what "we" did, referring to herself and Dishman, in jointly preparing the exhibits. As to Exhibit 1 she testified, "if it was two Gains, *we* took the Gains together, and if it was like two Ivory, *we* took the Ivory together"; "*We* first wrote it all down on this little sheet right here"; "when *we* put it on the register how much, [sic] when *we* did the price inquiry that's how much [came] up"; "*we* added that times two"; and "*We* just put that total there." Her testimony on Exhibit 2 included, "when Deputy Marcus came back, I did [an] original receipt, he told me to do it and then what *we* did is *we* did it like, like it was being rung up, and *we* avoided [sic] it."

ruled that Holcomb was present, participating, and observing the creation of the exhibits, and her inability to say that she checked the accuracy of every price as Dishman recorded it goes to the weight the court assigns the evidence. The trial court admitted both exhibits into evidence.

## II.  ANALYSIS

### A.  The Confrontation Clause

Robertson argues on appeal that the trial court erred by admitting the Commonwealth's Exhibits 1 and 2 in violation of the Confrontation Clause. In essence, the issue before us is essentially whether or not the Confrontation Clause of the Sixth Amendment requires the Commonwealth to tender for cross-examination every single person involved in the joint preparation of an exhibit. On appeal, constitutional arguments present questions of law that appellate courts review *de novo*. Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "'[T]he principal evil at which the Confrontation Clause was directed' . . . 'was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.'" Williams v. Illinois, 132 S. Ct. 2221, 2242 (2012) (quoting Crawford v. Washington, 541 U.S. 36, 50 (2004)).

Prior to Crawford, the United States Supreme Court "took the view that the Confrontation Clause did not bar the admission of an out-of-court statement that fell within a firmly rooted exception to the hearsay rule." Williams, 132 S. Ct. at 2232 (citing Ohio v. Roberts, 448 U.S. 56, 66 (1980)). The Roberts test allowed the jury "to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability." Crawford, 541 U.S. at 62. In Crawford, the Court overruled Roberts and held that where *testimonial* evidence is at issue, "the

- 4 -

Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68. Statements are "testimonial when the circumstances objectively indicate that there is no [ ] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006).

Clearly the two exhibits introduced against Robertson are testimonial in nature. Holcomb and Dishman jointly created the two exhibits in this case for the express purpose of establishing the total value of the stolen items at the later prosecution of Robertson for felony shoplifting. Thus, Robertson had a right under the Sixth Amendment to confront the source of those exhibits. However, given the collaborative nature of the way both Holcomb and Dishman jointly prepared these exhibits, we conclude that Robertson had the opportunity to and did confront Holcomb as a source of these exhibits, and thus no violation of Robertson's right to confront the evidence against her occurred.

The Supreme Court of the United States has held that, while exhibits may constitute testimonial evidence, there is no violation of the Confrontation Clause as long as the accused is confronted with "*a* live witness competent to testify to the truth of the statements made in the [exhibit]." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2709 (2011) (emphasis added) (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009)). In Melendez-Diaz, the United States Supreme Court held that a defendant is entitled to confront the analysts who prepared affidavits pertaining to substance analyses that were introduced against him at trial. Melendez-Diaz, 557 U.S. at 311. However, the Court specified,

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of a sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. [While it is the prosecution's obligation] to establish the chain of custody, this does not mean that everyone who laid hands on the evidence must

> be called. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live.

Id. at 311 n.1 (internal quotations and citations omitted).

In Aguilar v. Commonwealth, 280 Va. 322, 699 S.E.2d 215 (2010), the Supreme Court of Virginia held that the Confrontation Clause was satisfied when the supervising analyst who prepared the certificates of DNA analysis testified at a rape trial, even though an assistant analyst upon whose work he relied did not testify. Id. at 337, 699 S.E.2d at 222. While the supervisor relied on the assistant's DNA extraction, the supervisor was directly involved in the entire DNA analysis at issue and he was the person who drew the conclusions expressed in the certificates of analysis. Id. at 335, 699 S.E.2d at 221. The Court relied on the Melendez-Diaz footnote reproduced above, and quoted the Seventh Circuit, "'the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself.'" Id. at 335, 699 S.E.2d at 222 (quoting United States v. Turner, 591 F.3d 928, 933 (7th Cir. 2010)). The Court further stated, "the Sixth Amendment does not require that every person who had some role in performing a forensic analysis, or whose work upon which the ultimate conclusions depend, testify at trial." Id. See also Anderson v. Commonwealth, 48 Va. App. 704, 716 n.5, 634 S.E.2d 372, 377 n.5 (2006) ("Crawford has no applicability to out-of-court *conduct* observed by, relied upon, or noted by a witness who does appear at trial and subjects his testimony to cross-examination." (emphasis in original)).

In the present case, Holcomb, the store manager, testified at trial regarding the preparation of the handwritten list of stolen merchandise with their corresponding prices and the generation of the receipt from the cash register. Holcomb testified to the procedure employed to create Exhibit 1. In Holcomb's presence and under her direction, Dishman scanned the items into her cash register and wrote down the information produced by the register concerning a

description of each item and the corresponding price. Holcomb described in detail how they grouped multiples of the same item on the counter and how Dishman multiplied the scanned price times two or three, as necessary for such multiple items. In the light most favorable to the Commonwealth as the party that prevailed below, Holcomb testified on direct examination that she was watching the prices come up as she pulled the items from the buggy and observed that the prices were correct as Dishman put them on the paper. Holcomb also affirmed that the prices listed per item are the "actual retail prices that [the] store charged for those items at that time." Additionally, Holcomb created the adding machine tape attached to Exhibit 1 where she added the prices of the individual items to determine the total value of the stolen merchandise.

Holcomb and Dishman also worked together to create Exhibit 2, a voided receipt generated on Dishman's register from the handwritten list. Holcomb's testimony evidenced her involvement when she said that she had circled certain items on the receipt and marked them as "discontinued items" and that the price of other items had been reduced by the time they created the receipt. Further, both Holcomb and Dishman signed the receipt. Thus, the record reflects that while Dishman was the person who actually recorded the items and noted the prices reported by the cash register scan, Holcomb was present and directed, supervised, and observed the creation of the list of stolen items, and Holcomb created the adding machine tape. Similarly, Holcomb and Dishman collaborated in preparing the cash register receipt reflecting the value of those items. Holcomb's repeated testimony to what "we" did to prepare both exhibits emphasizes the collaborative nature of their efforts.

As noted in Melendez-Diaz and Aguilar, the Sixth Amendment does not require that everyone involved in the preparation of an exhibit testify as a witness at trial. Neither does the Confrontation Clause demand that everyone whose testimony *might* be relevant be required to

testify. Therefore, the fact that only Holcomb, and not Dishman, testified to the manner in which the two exhibits were created does not violate the Confrontation Clause.

The United States Supreme Court's decision in Bullcoming does not change this conclusion. In Bullcoming, the Supreme Court specifically noted that it was dealing with a very narrow issue not factually replicated here. Bullcoming was arrested for driving while intoxicated, and the principal evidence against him was a lab report certifying his blood alcohol concentration (BAC). Bullcoming, 131 S. Ct. at 2709. At trial, the prosecution did not call the analyst who signed the certification; instead the prosecution called another analyst who was familiar with the lab's testing procedures but who had not participated in or observed the test on Bullcoming's sample. Id. The testifying analyst had not even reviewed the analysis of the performing analyst that was introduced at trial. Id. at 2712. The narrow question decided by the Court was whether

> the Confrontation Clause permit[s] the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst *who did not sign the certification or personally perform or observe the performance of the test reported in the certification.*

Id. at 2713 (emphasis added). The Court rejected the reasoning of the New Mexico Supreme Court that the testifying analyst could substitute for the performing analyst because he was qualified as an expert with respect to the testing device used in the analysis and the lab procedures employed. The Court noted that the performing analyst was more than a "mere scrivener" and denounced such "surrogate testimony," as the testifying analyst could not convey what the performing analyst knew or observed about the particular test the certification concerned. Id. at 2714. "These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross examination." Id. Further, the testifying analyst conceded that "he played no role in producing the BAC report and did not

- 8 -

observe any portion of [the performing analyst's] conduct of the testing."  Id. at 2722

(Sotomayor, J., concurring) (noting that Bullcoming "is not a case in which the person testifying

is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the

scientific test at issue").[2]

Bullcoming is inapplicable to the present case since Holcomb only testified to what *she*

did and what she observed Dishman do under her direct observation and supervision.  Unlike the

situation in Bullcoming, Holcomb was present and supervised Dishman; Holcomb handed the

stolen items to Dishman who acted as a "mere scrivener" when she scanned the items into the

register and recorded the item description and price as reported by the register.  Holcomb

superintended the preparation of the list of stolen merchandise, checked the accuracy of "most"

of the items as they were scanned, apparently finding no discrepancies, and participated in

generating the second exhibit, a register receipt to establish the total value of the items stolen.

Therefore, unlike the challenged testimony in Bullcoming, Holcomb testified to her firsthand

knowledge of the creation of the exhibits and did not provide "surrogate testimony." [3]  Dishman

did nothing beyond a recordation function, supervised and observed by a competent witness who

---

[2] See United States v. Summers, 666 F.3d 192, 201-04 (4th Cir. 2011) (the Confrontation Clause did not require the lab analyst who produced raw data to be present at trial for the appellant to confront him); cf. United States v. Ignasiak, 667 F.3d 1217, 1230-31 (11th Cir. 2012) (Confrontation Clause violation where the doctor who testified at trial did not "personally observe or participate" in the autopsies); and United States v. Ramos-Gonzalez, 664 F.3d 1, 5 (1st Cir. 2011) (interpreting Bullcoming and stating, "where a testimonial certified forensic lab report is offered for its truth as evidence in a criminal prosecution, the accused has at least the right to confront the scientist who performed, observed, or supervised the analysis").

[3] The Court of Appeals of Texas has similarly distinguished Bullcoming when it determined that the appellant's Confrontation Clause rights were not violated by the admission of the testimony of Rhonda Craig, who was the supervising forensic DNA examiner in the case. McWilliams v. State, 367 S.W.3d 817, 820 (Tex. App. – Houston 2012).  The court found that Craig was a supervisor, involved in "every aspect of the testing process, first by determining which samples should be tested, which tests should be conducted and in what order, then through supervision, then through analysis of the data, and lastly by writing the report.  She had a direct connection to the scientific test at issue." Id.

did testify subject to cross-examination. Dishman's additional testimony was unnecessary as foundation for the admission of either exhibit. Holcomb signed the receipt attesting to the accuracy of the information recorded by Dishman, and signifying her agreement with the information contained therein.

Thus, the analysis in this case is governed by the analyses of Melendez-Diaz and Aguilar. Similar to the facts in the record before us, in Aguilar, the supervisor who testified at trial was directly involved in the entire DNA analysis at issue and he was the one who made the conclusions expressed in the certificates of analysis that were introduced against the appellant. To the contrary, in Bullcoming the testifying analyst played no role in the certificate introduced at trial and had not even reviewed the analysis. Any deficiencies in Holcomb's testimony on cross-examination regarding what she may or may not have overlooked in observing and supervising Dishman's recordkeeping is certainly relevant to the weight the factfinder may choose to assign to the evidence, but it does not implicate a violation of the Confrontation Clause.

There is no Sixth Amendment Confrontation Clause violation where, as here, an exhibit is jointly prepared, and at least one of the proponents intimately involved in the preparation of the exhibit is subject to cross-examination. To conclude to the contrary would blur the distinction between the weight a factfinder may choose to give to the evidence and the constitutional issues presented in a Confrontation Clause analysis. Thus, the trial court did not err by admitting the exhibits based upon the foundation laid by Holcomb concerning which she was cross-examined, thereby honoring Robertson's Sixth Amendment right to confront a witness intimately involved in the preparation of the exhibits.

B.  Sufficiency of the Evidence

Robertson argued that without the exhibits, the Commonwealth failed to prove that the value of the merchandise was over two hundred dollars, and thus the evidence was insufficient to prove the crime of felony shoplifting.  Having found that the exhibits were properly admitted at trial, and because the evidence establishes that the value of the merchandise was at least two hundred dollars, the minimum required by Code § 18.2-103, we find that the evidence was sufficient to support a conviction of felony shoplifting.

III.  CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

Huff, J., with whom Petty, J., joins, dissenting.

I respectfully dissent for the reasons set forth in the panel majority opinion.  <u>See</u>

<u>Robertson v. Commonwealth</u>, 60 Va. App. 688, 732 S.E.2d 30 (2012).

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **23rd** *day of* **October, 2012**.

Latoya Mrytrise Robertson,                                                                                      Appellant,

against          Record No. 0477-11-3
                 Circuit Court No. CR10000750-00

Commonwealth of Virginia,                                                                              Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston, McCullough, Huff and Chafin

On September 25, 2012 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on September 11, 2012, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on September 11, 2012 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel)

with the clerk of this Court.  The electronic copies must be filed on twelve separate CDs or DVDs and must

be filed in Adobe Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:  *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1]  The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Huff
Argued at Salem, Virginia


LATOYA MRYTRISE ROBERTSON
                                                          OPINION BY
v.        Record No. 0477-11-3                    JUDGE GLEN A. HUFF
                                                       SEPTEMBER 11, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

Gregory T. Casker for appellant.

Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Latoya Mrytrise Robertson ("appellant") appeals her conviction of felony shoplifting, in

violation of Code § 18.2-103.  Following a bench trial in the Circuit Court of Pittsylvania County

("trial court"), appellant was sentenced to two years' incarceration, with all but sixty days

suspended.  On appeal, appellant argues that the trial court violated her right to confrontation

when it admitted two exhibits to establish the value of the shoplifted merchandise without

providing her an opportunity to cross-examine the exhibits' author.  Appellant further argues that

the trial court erred in finding the evidence sufficient to convict her of felony shoplifting in that

the improperly admitted exhibits constituted the sole basis for finding that the merchandise had a

value of at least $200.  For the following reasons, we reverse the trial court's judgment and

dismiss appellant's conviction of felony shoplifting.

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003).  So viewed, the evidence established that on January 7, 2010, Malinda Holcomb ("Holcomb"), the manager of a Family Dollar Store in Brosville, observed appellant enter the check-out line at the store.  After appellant purchased a large opaque storage bin and a small drink, appellant kept the storage bin in her shopping cart and traveled back down the store aisles.

Based on appellant's behavior, Holcomb grew suspicious and followed appellant to the back of the store.  Holcomb saw appellant speaking to another female shopper who had a plastic storage bin in a shopping cart that was identical to the storage bin appellant had just purchased.  Holcomb observed the female shopper placing merchandise into the unpurchased storage bin.  At that point, Holcomb offered to hold appellant's purchased storage bin at the front of the store.  Appellant, however, replied that she was preparing to leave, and so Holcomb returned to the front of the store.

Approximately twenty minutes later, Holcomb saw appellant hurriedly approach the store exit.  Holcomb told appellant, "I need to check your tote" to "make sure it's still empty."  Holcomb then lifted the lid of the storage bin and found numerous unpurchased items inside.  After telling appellant to leave the store, Holcomb instructed a cashier, Ashley Henderson, to contact the police.  The other female shopper left the store shortly thereafter.

Taking appellant's storage bin back to a cash register, Holcomb and another employee, Cynthia Dishman ("Dishman"), conducted an inventory of the unpurchased items in the bin.  To do so, Holcomb first took each item out of the bin and placed it on the counter.  Dishman then prepared a handwritten list identifying each item of merchandise, and beside each entry she

recorded the price that showed on the cash register's screen when she scanned each item. When Dishman had scanned all of the items and recorded them on the paper, Holcomb totaled the prices to obtain a sum of $235.10. Although Holcomb supervised the operation, she admitted that she did not personally observe the notations on Dishman's handwritten list to make certain of the list's accuracy.

On April 23, 2011, Marcus Jones, an investigator for the Pittsylvania County sheriff's office who had initially responded to the 9-1-1 call from the store, requested confirmation of the value of the merchandise recovered from the storage bin. To confirm the value of the items, Holcomb supervised Dishman as Dishman generated a voided receipt on the cash register, using the handwritten inventory of items for reference. The total value on the receipt reflected reduced prices on various discontinued items, which Holcomb circled on the receipt and noted at trial.

Appellant objected at trial to the admission of the handwritten inventory (admitted as Exhibit 1) on the ground that the person who had prepared the document was not subject to cross-examination. Appellant also objected to the admission of the voided receipt (admitted as Exhibit 2) on the same ground because the receipt had been generated using the handwritten inventory as a reference. The trial court allowed *voir dire* on the admissibility of both exhibits, the pertinent parts of which follow:

> [Holcomb]: I'm the one that removed [the items] from the tote to the buggy and then I took them out of the buggy and put them up on the counter for [Dishman] to write it down.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> [Appellant's counsel]: Were any safeguards made . . . ?
>
>     \*    \*    \*    \*    \*    \*    \*
>
> [Holcomb]: [I]f we had, if it was multiples we put it together and then [Dishman] scanned the one to get the price and then she would write times two, or times four or whatever.

[Appellant's counsel]:  Now to be fair, you, after each entry, you didn't look down to see if she wrote the right, I mean were you, were you able to see for each item what was, what was popping up on the, on the screen?

[Holcomb]:  Yes, I was.

[Appellant's counsel]:  On the register?

[Holcomb]:  Yeah.

[Appellant's counsel]: And, and did you, I mean, truthfully did, did, did you, for each item that she was writing down, were you verifying in any way that that was the, the, the correct figure that was showing at the, on the register screen at that time?

[Holcomb]:  Yes, I pretty much know most of those, you know, are correct.

[Appellant's counsel]:  Well, my, my question is, did, at the time that she was preparing this document . . . did you make sure that she wrote down for the figure to the right of that . . . what was showing up on the register.

[Holcomb]:  Probably not.

[Appellant's counsel]:  And then the attached receipt to this handwritten document is, you just went down the right side and then just totaled those numbers up, is that correct?

[Holcomb]:  Right. . . .

\*      \*      \*      \*      \*      \*      \*

[Appellant's counsel]:  [B]ut you were working off the sheet that [Dishman] had prepared?

[Holcomb]:  Right.

[Appellant's counsel]:  Okay.  As to Exhibit number 2 . . . .

\*      \*      \*      \*      \*      \*      \*

[Appellant's counsel]:  And again . . . did [Dishman] create this and then you signed off on it? . . . .

[Holcomb]:  Yeah, that's her number.  Yeah, she, it was on her register.

- 4 -

* * * * * * *

[Appellant's counsel]: You had nothing to do with creating this. You just signed off on it.

[Holcomb]: I was with [Dishman] when she did that.

At the conclusion of the *voir dire*, the trial court overruled appellant's objection and determined that the evidence was admissible, but noted "[Holcomb] admits she didn't look every time . . . [Dishman] wrote it down to make sure it [the handwritten list] was accurate." The trial court also overruled appellant's motion to strike the evidence and renewed motion to strike at the conclusion of her case, and found appellant guilty of felony shoplifting. This appeal followed.

II. ANALYSIS

Appellant contends that the trial court violated her right to confrontation when it admitted two of the Commonwealth's exhibits, a handwritten inventory and a voided store receipt, to prove the value of the merchandise. Appellant further contends that the trial court erred in finding the evidence sufficient to convict her of felony shoplifting on the basis that the evidence proving the items' value was $200 or more was unlawfully admitted.

A. Right to Confrontation

Appellant first contends that the trial court violated her right to confrontation when it admitted the handwritten inventory and the voided store receipt.

Where there is "a question of law as to the admissibility of evidence, we apply a de novo standard of review." Walker v. Commonwealth, 281 Va. 227, 230, 704 S.E.2d 124, 126 (2011) (citation omitted).

"The Confrontation Clause of the Sixth Amendment to the United States Constitution mandates that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Wimbish v. Commonwealth, 51 Va. App. 474, 480, 658 S.E.2d 715, 718 (2008) (quoting U.S. Const. amend. VI). "[T]his bedrock procedural guarantee

- 5 -

applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004) (citing Pointer v. Texas, 380 U.S. 400, 406 (1965)).

However, "a defendant's right to confrontation only applies to testimonial hearsay . . . ." Wilder v. Commonwealth, 55 Va. App. 579, 589, 687 S.E.2d 542, 547 (2010). "'Testimony'. . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford, 541 U.S. at 51 (citation omitted). "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59.

The Commonwealth bears the burden to show that the evidence it offers meets constitutional requirements. "Generally, when a specific objection is made to evidence or when inquiry is made by the trial judge concerning the purpose of evidence, the proponent of the evidence has the burden of establishing its admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420, 425 S.E.2d 521, 523 (1992). This principle certainly applies when a party raises a constitutional objection to proffered evidence. See, e.g., Shell v. Commonwealth, 11 Va. App. 247, 251, 397 S.E.2d 673, 675 (1990) (noting that in the Fifth Amendment context, "[i]n order for a confession to be admissible, the Commonwealth bears the burden of proving the defendant voluntarily made a knowing and intelligent waiver of his constitutional privilege against self-incrimination and his right to counsel").

In addition, "error involving the Sixth Amendment's Confrontation Clause is subject to constitutional harmless error analysis." Crawford v. Commonwealth, 281 Va. 84, 101, 704 S.E.2d 107, 117 (2011) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)); see Van Arsdall, 475 U.S. at 684 ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."). "[I]n conducting a constitutional harmless

error analysis, '[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Crawford, 281 Va. at 100, 704 S.E.2d at 117 (citation omitted). "'Whether . . . an error is harmless in a particular case depends upon a host of factors . . . [including] whether [that evidence] was cumulative, [and] the presence or absence of evidence corroborating or contradicting the [tainted evidence] on material points . . . .'" Id. at 101, 704 S.E.2d at 117-18 (citations omitted).

We note at the outset that the two exhibits which were admitted to prove the value of the items constituted testimonial evidence. Dishman, with Holcomb's assistance and supervision, prepared the handwritten inventory immediately following appellant's attempt to leave the store with unpurchased items in her shopping cart. Dishman, the author of the handwritten list, was the declarant of the testimonial hearsay which was offered into evidence. The primary purpose of the handwritten inventory was to prove the value of the items appellant had attempted to take. Holcomb and Dishman subsequently created a voided store receipt to confirm the value of the items. Both the handwritten inventory and the voided store receipt established that the value of the items was at least $200, which was relevant to appellant's prosecution for felony, rather than misdemeanor, shoplifting. As such, the evidence was testimonial in nature so as to fall within the purview of the Confrontation Clause.

In turning to whether the admission of the evidence violated appellant's right to confrontation, Holcomb testified that she supervised Dishman, who recorded the handwritten inventory and "rang up" the voided receipt. With regard to the handwritten inventory, Holcomb testified that she "removed [the items] from the tote to the buggy," but that Dishman recorded the items along with their quantity and prices on the piece of paper. Holcomb also admitted that she did not verify that Dishman wrote down the correct item and price for each item scanned, nor did she confirm that the correct quantity of each item was recorded. In ruling on the evidence,

the trial court found that "[Holcomb] didn't look every time . . . to make sure it [the handwritten list] was accurate."[1]

Also, with regard to the voided receipt, Holcomb testified that she and Dishman referenced the handwritten inventory for a list of the items. Based on the list of items that Dishman had recorded by hand, Holcomb and Dishman conducted a new price inquiry for each item. The cash register then computed the total value of the merchandise, which included the discounts for various discontinued items. Although Holcomb "was with" Dishman and "signed off" on the completed receipt, Holcomb did not personally create the receipt. Furthermore, the printed cash register receipt was derived from Dishman's handwritten list, and showed that the total value of the merchandise was at least $200. Holcomb testified that she neither created nor confirmed the accuracy of the handwritten inventory and the voided receipt, and appellant was not given a previous opportunity to cross-examine Dishman, the exhibits' declarant, regarding the evidence of the value of the items.

The exhibits establish two discrete propositions. The first proposition the exhibits establish is that a particular set of items was stolen. The second proposition is that those items had a particular value. It is impossible to prove the value of stolen items unless one knows what the items are. There was no witness at trial who actually testified as to what items were stolen or what their value was. The two exhibits were introduced as the only evidence to prove both of these crucial facts. In order for the exhibits to pass constitutional muster, the requirements of the Confrontation Clause must be satisfied as to both of these testimonial propositions.

However, the person making these testimonial statements in the exhibits was not the person who testified at trial. The record does not support the supposition that Holcomb was the

---

[1] Contrary to the suggestion in the dissent, Holcomb, by her own testimony, admitted that she was not competent to vouch for the accuracy of the exhibits.

declarant of these statements in the exhibits.  In her direct testimony, Holcomb stated that she participated in taking the stolen items out of the buggy and putting them on the counter, but that it was Dishman who actually ran the price inquiry on the register and "wrote it down."  On cross-examination, Holcomb expressly stated regarding Exhibit 1, "That's [Dishman's] handwriting."  Furthermore, regarding the prices recorded beside each of the items listed, Holcomb could not testify that she personally knew each of those entries was correct.  At one point, she asserted, "I pretty much know most of those, you know, are correct."  However, when defense counsel immediately followed up by asking Holcomb whether she made sure that Dishman accurately recorded each item's price as she went along, Holcomb responded, "[p]robably not."  Moreover, with respect to Exhibit 2, Holcomb testified that Dishman created that exhibit from the prior handwritten list (Exhibit 1).

This testimony demonstrates that the individual making the testimonial statements contained in the exhibits was Dishman and not Holcomb.  Holcomb did not testify as to what the specific items were that were stolen, nor did she testify that she knew each of the items on the list was properly recorded by someone she observed accurately making each entry.  Furthermore, she did not recite the prices of the items listed based on her own personal knowledge, nor did she testify that she observed Dishman accurately recording each price as it was shown on the register screen.  Her testimony was limited to establishing how Dishman created the documents; she did not verify the contents and accuracy of the documents, and they were not offered as Holcomb's past recollection recorded.[2]  Thus, the only evidence establishing the identity and value of the

_____

[2] The dissent argues that because Holcomb knew that some of the prices recorded on Exhibit 1 were correct, any lack of specificity goes only to the weight to be assigned the exhibit, not its admissibility.  See infra at 23.  However, this argument assumes that Holcomb was in fact the one giving the testimony contained in the exhibit.  This assumption is belied by the fact that Holcomb did not testify that the exhibit was an accurate recording of either the identity of the items or their value as displayed on the cash register screen, nor did she have an independent recollection of the sixty-seven items listed on the exhibit or personal knowledge of their value.

stolen items consisted of written testimonial statements made not by the person testifying in court, but by an absent individual who was not subject to cross-examination.[3] Thus, viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth failed to show that the exhibits here satisfied the Confrontation Clause's requirements.[4]

In the wake of Crawford v. Washington and its progeny, the Supreme Court of Virginia has instructed that the Sixth Amendment's right to confrontation requires an opportunity for cross-examination of any witness whose "'declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact'" are being offered into evidence. Aguilar v. Commonwealth, 280 Va. 322, 333, 699 S.E.2d 215, 220 (2010) (citation omitted); see Davis v. Washington, 547 U.S. 813, 822 (2006) ("[Statements] are testimonial when . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."); see also Bullcoming v. New Mexico, 131 S. Ct. 2705, 2717 (2011) ("A document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial." (citation omitted)). While the requirement of an opportunity for cross-examination does not extend to every incidental participant who assisted in the process or

---

[3] Indeed, the Commonwealth's original argument for the admissibility of the exhibits in the trial court was based on the shopbook rule, Virginia's iteration of the business records exception to the hearsay rule. Cf. Twine v. Commonwealth, 48 Va. App. 224, 629 S.E.2d 714 (2006). This argument presumes that the documents were in fact hearsay, since there is no need to argue for the application of an exception to the hearsay rule unless the hearsay rule actually applies. Thus, even the Commonwealth originally treated the exhibits as the statements of an out-of-court declarant, i.e., Dishman, rather than as the statements of Holcomb.

[4] Both the direct and the cross-examination of Holcomb provide a confused and, at times, contradictory picture of the extent of her participation in the creation of both exhibits, as well as her personal knowledge of their contents. The Commonwealth bore the burden to establish that the exhibits were admissible under the Confrontation Clause. Despite this burden, the Commonwealth conceded at trial that Holcomb was "not proofreading or double[-]checking everything that was going on," and the trial court found that "she can't testify she followed every number that was written down." Accordingly, the Commonwealth failed to meet its burden of proving that Holcomb either created or personally verified the contents of either exhibit.

analysis culminating in the testimony being offered, such requirement is mandated as to the declarant of the testimonial evidence. See generally Bullcoming, 131 S. Ct. 2705. Here, the author (declarant) of the handwritten list was not subject to cross-examination. Surrogate testimony was offered by a supervisor who assisted in the process, but did not observe or participate in the creation of the handwritten notations, and therefore was unable to verify the accuracy of the list which was offered into evidence and which was the basis for the voided receipt exhibit.[5] The supervisor's role was incidental to the creation of the exhibits; Dishman, however, was the declarant of the statements made by the two exhibits. Accordingly, the Sixth Amendment right of confrontation guaranteed an opportunity to cross-examine the declarant, Dishman.

This case is controlled by Bullcoming, not by Aguilar. In Bullcoming, the United States Supreme Court reaffirmed the general principle that "[a]s a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." 131 S. Ct. at 2713. The Court held that "the testimonial statement of one witness . . . [cannot] enter into evidence through the in-court testimony of a second [person]." Id. at 2715.

---

[5] We distinguish these facts from the Supreme Court's recent decision in Williams v. Illinois, 132 S. Ct. 2221 (2012). Williams addressed the authority of an expert witness to incorporate assumed facts into her opinion testimony at a bench trial, where the assumed facts were derived from laboratory work in which the expert witness had no involvement. Id. at 2227. A plurality of the Supreme Court held in Williams that a Confrontation Clause violation had not occurred because the expert witness' testimony had not sought to establish the truth of the facts on which she relied in forming her opinion. Id. at 2239-40. The plurality further noted that the laboratory report was outside of the ambit of the Confrontation Clause as it was generated "before any suspect was identified," and thus was not "sought . . . for the purpose of obtaining evidence to be used against [the] petitioner." Id. at 2228. Here, by contrast, Holcomb used Dishman's out-of-court statements, memorialized in the two exhibits, to testify as to the truth of the value of the stolen merchandise. Moreover, the exhibits themselves were created for the purpose of prosecuting appellant for shoplifting. Thus, we find Williams inapplicable to the present case.

The Court noted that the analyst in that case had "certified to more than a machine-generated number," id., and that the representations contained in his certification were "meet for cross-examination," id. at 2714.

Similarly, the testimonial exhibits in this case constituted more than simply machine-generated numbers. As explained above, the exhibits contained testimonial assertions both as to what items were in fact stolen and as to what the value of those particular items was. The assertion that "this is an accurate list and valuation of what the defendant stole" is most emphatically "meet for cross-examination." See id. Accordingly, the testimonial statement of Dishman should not have entered into evidence through the in-court testimony of Holcomb. See id. at 2713.

It is true that the individual who provided in-court testimony in Bullcoming "did not sign the certification or personally perform or observe the performance of the test reported in the certification." Id. As the dissent points out, Holcomb did exercise some degree of observation over Dishman's activities in this case. See infra at 20. However, this is a superficial and immaterial distinction on the facts of this case. The Court in Bullcoming noted that the person who testified in court "acknowledged that 'you don't know unless you actually observe the analysis that someone else conducts, whether they [sic] followed th[e] protocol in every instance.'" 131 S. Ct. at 2715 n.8 (alteration in original).[6] Here, Holcomb did not observe Dishman's activities sufficiently to know whether she was accurately recording the entries in each instance. The entries are Dishman's statements, not Holcomb's, and the level of

---

[6] In the present case, there is no evidence that there was any protocol at all for making lists of stolen items and their value. Thus, the opportunity to cross-examine the person who made the list—Dishman—is even *more* important than it might otherwise be, since no one can even say that she followed a set protocol established to ensure reliability or evaluate such a protocol. This was a one-time, out-of-the-ordinary event that Holcomb and Dishman dealt with in an apparently *ad hoc* manner.

- 12 -

"observation" Holcomb exercised over Dishman's activities was inadequate to remove the concerns underlying the right of cross-examination under the Confrontation Clause. For, as the United States Supreme Court has explained, "the [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." Id. at 2716. Simply put, "the opportunity to confront a substitute witness [does not satisfy the Sixth Amendment]." Id. Holcomb was merely a substitute witness whose in-court testimony did not satisfy the requirements of the Sixth Amendment.[7]

This case is simply not analogous to Aguilar. In Aguilar, "the only 'declaration[s]' or 'affirmation[s]' contained in the admitted certificates of analysis were [those of the person who actually testified in court]." 280 Va. at 333, 699 S.E.2d at 220 (first two alterations in original). In concluding there was no Confrontation Clause violation in that case, the Supreme Court noted that the certificates of analysis that were admitted "did not contain the results of [the first non-testifying examiner's] work product in any form, much less her 'declaration[s]' or 'affirmation[s].'" Id. at 333, 699 S.E.2d at 221 (second and third alterations in original). Nor did they "contain any notes or reports [the second non-testifying technician] might have generated during the course of her work; and they did not report any factual findings [she made] about the DNA analysis." Id. at 334, 699 S.E.2d at 221. Simply put, the testimony presented in Aguilar was solely that of the witness, not that of the absent parties. Here, in contrast, the challenged exhibits are the "work product," "notes," "reports," and "factual findings" of

_____

[7] The dissent concludes the contents of the exhibit were admissible simply because Holcomb observed the process by which the exhibit was created, regardless of her lack of knowledge of its accuracy. See infra at 24. This conclusion is similar to suggesting that a police officer could introduce a transcript of a defendant's statement to another officer simply because he watched a muted video of the interrogation. Such a procedure would run afoul of the Sixth Amendment.

- 13 -

Dishman, not Holcomb. Thus, under the standard set forth in Bullcoming, Dishman's live testimony in court was necessary to render the exhibits admissible under the Sixth Amendment.

The dissent quotes the United States Supreme Court's statement in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009), that "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." Infra at 18. However, this case is not about establishing chain of custody, showing authenticity of material used, or proving accuracy of a device or machine. Rather, this case is about the personally prepared documents of an out-of-court declarant that contain testimony regarding what items were stolen and what their value was.

Since Holcomb did not prepare either of the exhibits or testify that she observed Dishman accurately preparing either exhibit, Holcomb's testimony and presence in court was inadequate to satisfy the requirements of the Confrontation Clause of the Sixth Amendment. Accordingly, both of the exhibits were improperly admitted.

Having determined that the trial court erred in admitting the evidence in violation of appellant's confrontation right, we next consider whether that error was harmless. Crawford, 281 Va. at 101, 704 S.E.2d at 117. The Commonwealth argues that any error occurring as a result of the admission of the handwritten list was cured by the admission of the voided receipt, which relied on the cash register to generate the value of the merchandise. However, as we addressed above, the receipt was derived from the handwritten list of items and thus suffers from the same constitutional defect. Furthermore, these two exhibits together constituted the only evidence proving the value of what appellant stole. Thus, their admission was not harmless error.

B.  Sufficiency of the Evidence

Appellant also contends that the trial court erred in finding the evidence sufficient to convict her of felony shoplifting on the basis that the evidence admitted to prove the value of the items was unlawfully admitted.

In a challenge to the sufficiency of the evidence on appeal, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense."  Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).  "Furthermore, 'we presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'"  Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted).

Code § 18.2-103 provides, in relevant part, that

> [w]hoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment . . . when the value of the goods or merchandise involved in the offense is less than $200, shall be guilty of petit larceny and, when the value of the goods or merchandise involved in the offense is $200 or more, shall be guilty of grand larceny.

We note at the outset that the Supreme Court of Virginia has limited the quantum of evidence that we may consider in reviewing sufficiency of the evidence claims to "'[a]ny evidence properly admitted at trial.'"  Crawford, 281 Va. at 112, 704 S.E.2d at 123 (citation omitted).  Under this standard, "an appellate court may not consider evidence illegally admitted at trial.  To hold otherwise would circumvent on appeal the Constitutional protections provided to a defendant at trial."  Id. at 112, 704 S.E.2d at 123-24; see Rushing v. Commonwealth, 284

- 15 -

Va. 270, 726 S.E.2d 333 (2012) (applying the standard articulated in <u>Crawford</u> to non-constitutional error).

Applying these principles, the evidence was insufficient to prove that the value of the merchandise was at least $200 in absence of the erroneously admitted exhibits. Because no other evidence was admitted to prove the value of the merchandise, the Commonwealth has not proved a requisite element of felony shoplifting under Code § 18.2-103. Thus, we hold that the evidence properly admitted at trial was insufficient to support appellant's conviction.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and dismiss appellant's conviction of felony shoplifting, entering final judgment here.[8]

<u>Reversed and final judgment.</u>

---

[8] We note that the rule established by the Supreme Court in <u>Crawford</u> and <u>Rushing</u> is the standard of appellate review in Virginia and differs from the rule enunciated by the Supreme Court of the United States in <u>Lockhart v. Nelson</u>, 488 U.S. 33, 34 (1988) (holding "where the evidence offered by the State and admitted by the trial court – whether erroneously or not – would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial"). We express no opinion as to whether application of this standard constitutes an acquittal for purposes of the Double Jeopardy Clause in the event that the Commonwealth elects to proceed further.

Humphreys, J., dissenting.

I do not agree that the admission of the two challenged exhibits during Holcomb's testimony violated Robertson's Sixth Amendment right of confrontation, and because I also conclude that the exhibits in question provide sufficient evidence from which the jury could reasonably conclude that Robertson feloniously shoplifted over $200 in merchandise, I respectfully dissent from the analysis and judgment of the majority.

A.  The Application of the Confrontation Clause of the Sixth Amendment

At its essence, the issue upon which the majority and I disagree is whether or not the Confrontation Clause of the Sixth Amendment can ever be satisfied when fewer than every single person involved in the joint preparation of an exhibit provides the evidentiary foundation for its admission and is tendered for cross-examination by the Commonwealth.

"'[T]he principal evil at which the Confrontation Clause was directed' . . . 'was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.'"  Williams v. Illinois, 132 S. Ct. 2221, 2242 (2012) (quoting Crawford v. Washington, 541 U.S. 36, 50 (2004)).  "'[I]n England, pretrial examinations of suspects and witnesses by government officials were sometimes read in court in lieu of live testimony.'  The Court has thus interpreted the Confrontation Clause as prohibiting modern-day practices that are tantamount to the abuses that gave rise to the recognition of the confrontation right."  Id. (quoting Michigan v. Bryant, 131 S. Ct. 1143, 1152 (2011)).  No such abuse of the right to confront witnesses occurred here.

I do agree with the majority that the two exhibits introduced against appellant are testimonial in nature and thus Robertson had a right under the Sixth Amendment to confront the source of those exhibits.  Where I part from my colleagues is that, given the collaborative nature of the way both Holcomb and Dishman jointly prepared these exhibits, I would hold that

- 17 -

Robertson had the opportunity to and did confront Holcomb as a source of these exhibits and thus no violation of Robertson's right to confront the evidence against her occurred.

Clearly Holcomb and Dishman jointly created the two exhibits in this case for the express purpose of establishing the total value of the stolen items at the later prosecution of Robertson for felony shoplifting, and thus I agree with the majority that they are testimonial in nature and subject to the protection afforded by the Sixth Amendment.

However, while exhibits may constitute testimonial evidence, there is no violation of the Confrontation Clause as long as the accused is confronted with "*a* live witness competent to testify to the truth of the statements made in the [exhibit]." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2709 (2011) (emphasis added) (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009)). That is precisely what occurred here. In Melendez-Diaz, the United States Supreme Court held that a defendant is entitled to confront the analysts who prepared affidavits pertaining to substance analyses that were introduced against him at trial. Melendez-Diaz, 557 U.S. at 311. However, the Court specified,

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of a sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. [While it is the prosecution's obligation] to establish the chain of custody, this does not mean that everyone who laid hands on the evidence must be called. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live.

Id. at 311 n.1 (internal quotations and citations omitted).

In Aguilar v. Commonwealth, 280 Va. 322, 699 S.E.2d 215 (2010), the Virginia Supreme Court held that the Confrontation Clause was satisfied when the supervising analyst who prepared the certificates of DNA analysis testified at a rape trial, even though an assistant analyst upon whose work he relied did not testify. Id. at 337, 699 S.E.2d at 222. While the supervisor

- 18 -

relied on the assistant's DNA extraction, the supervisor was directly involved in the entire DNA

analysis at issue and he was the person who drew the conclusions expressed in the certificates of

analysis. Id. at 335, 699 S.E.2d at 221. The Court relied on the Melendez-Diaz footnote

reproduced above, and quoted the Seventh Circuit, "'the Sixth Amendment does not demand that

a chemist or other testifying expert have done the lab work himself.'" Id. at 335, 699 S.E.2d at

222 (quoting United States v. Turner, 591 F.3d 928, 933 (7th Cir. 2010)). The Court further

stated, "the Sixth Amendment does not require that every person who had some role in

performing a forensic analysis, or whose work upon which the ultimate conclusions depend,

testify at trial." Id. See also Anderson v. Commonwealth, 48 Va. App. 704, 716 n.5, 634 S.E.2d

372, 377 n.5 (2006) ("Crawford has no applicability to out-of-court *conduct* observed by, relied

upon, or noted by a witness who does appear at trial and subjects his testimony to

cross-examination." (emphasis in original)).

In the present case, Holcomb, the store manager, testified at trial regarding the

preparation of the handwritten list of stolen merchandise with their corresponding prices and the

generation of the receipt from the cash register.[9] Holcomb testified that the procedure employed

to create these exhibits was that she would remove the shoplifted items one-by-one from the

"tote" or "buggy" and hand them to Dishman to "scan it to, well, you have to do a price inquiry

to scan it to see how much [sic], see what it is." App. at 40. Dishman would scan each item

---

[9] Although the majority does not address it, the Commonwealth conceded in its brief that the trial court's admission of the handwritten list of stolen merchandise violated the Confrontation Clause. During oral argument, the Assistant Attorney General clarified that her concession applied only to the evidence of the handwritten prices corresponding to each item of merchandise and not to the listed items themselves. This Court is "not bound by concessions of law by the parties." Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007). Appellate courts cannot be forced to accept a flawed construction of law simply because of a tactical decision by one or both parties. Id. For the reasons stated more fully *infra*, I would reject the Commonwealth's concession of law that the information was inadmissible on Sixth Amendment grounds as not being well founded.

- 19 -

received from Holcomb into her cash register and write down the information produced by the register concerning the item description and price. In support of its analysis, the majority ignores two significant portions of Holcomb's testimony. Holcomb testified on direct examination that she was "watching the prices come up as she pulled the items from the buggy" and "observed that the prices were correct as [Dishman] put them on the paper." App. at 40-41. Moreover, the majority incorrectly asserts that Dishman prepared the second exhibit, the register receipt. Supra at 8. However, the record clearly reflects that it was Holcomb who created this second exhibit. App. at 41. This exhibit, a receipt generated on Dishman's register by Holcomb from the original list with the exception that Holcomb deducted the sales tax that the cash register apparently automatically computed on the original list, was signed by both Holcomb and Dishman. Thus, the record reflects that while Dishman was the person who actually recorded the items and noted the prices reported by the cash register scan, Holcomb was present and directed, supervised, and observed the creation of the list of stolen items and was solely the person responsible for preparing the register receipt reflecting the value of those items. As noted in Melendez-Diaz and Aguilar, the Sixth Amendment does not require that everyone involved in the preparation of an exhibit testify as a witness at trial. Neither does the Confrontation Clause demand that everyone whose testimony *might* be relevant be required to testify. Therefore, the fact that only Holcomb, and not Dishman, testified to the manner in which the two lists of items stolen were created does not violate the Confrontation Clause.

The United States Supreme Court's decision in Bullcoming and its most recent decision in Williams do not change this conclusion. The majority relies upon Bullcoming as authority for the majority's holding in this case. However, in Bullcoming, the Supreme Court specifically noted that it was dealing with a very narrow issue not factually replicated here. Bullcoming was arrested for driving while intoxicated and the principal evidence against him was a lab report

certifying his blood alcohol concentration (BAC). Bullcoming, 131 S. Ct. at 2709. At trial, the prosecution did not call the analyst who signed the certification, but instead called another analyst who was familiar with the lab's testing procedures and who had not participated in or observed the test on Bullcoming's sample. Id. The testifying analyst had not even reviewed the analysis of the performing analyst that was introduced at trial. Id. at 2712. The narrow question decided by the Court was whether

> the Confrontation Clause permit[s] the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst *who did not sign the certification or personally perform or observe the performance of the test reported in the certification.*

Id. at 2713 (emphasis added). The Court rejected the reasoning of the New Mexico Supreme Court that the testifying analyst could substitute for the performing analyst because he was qualified as an expert with respect to the testing device used in the analysis and the lab procedures employed. The Court noted that the performing analyst was more than a "mere scrivener" and denounced such "surrogate testimony," as the testifying analyst could not convey what the performing analyst knew or observed about the particular test the certification concerned. Id. at 2714. "These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross examination." Id. Further, the testifying analyst conceded that he played no role in producing the BAC report and did not observe any portion of the performing analyst's conduct of the testing. Id. at 2722 (Sotomayor, J., concurring) (also noting that the court below recognized the witness' total lack of connection to the test at issue).

In Williams, a four justice plurality plus Justice Thomas, for differing reasons, found that third-party evidence relied upon by an expert to formulate his opinion expressed at trial was not

- 21 -

testimonial in nature and therefore did not violate the Confrontation Clause.  <u>Williams</u>, 132 S. Ct. at 2228.

In my view, neither <u>Williams</u> nor <u>Bullcoming</u> are applicable to the case before us.  I agree with the majority that <u>Williams</u> is inapplicable to this case, because the exhibits here are unquestionably testimonial.  The majority's analysis regarding <u>Bullcoming</u> and his conclusion that it controls the outcome of this appeal flows from an initial premise that "the only evidence establishing the identity and value of the stolen items consisted of written testimonial statements made not by the person testifying in court."  However, <u>Bullcoming</u> is also inapplicable since Holcomb only testified to what *she* did and what she observed Dishman do under her direct observation and supervision.  In the present case and unlike the situation in <u>Bullcoming</u>, Holcomb was present while the list was prepared and handed the stolen items to Dishman who did nothing but scan the items into the register and record the item description and price including sales tax as reported by the register.  Holcomb superintended the preparation of the list of stolen merchandise, spot checked the accuracy of "most" of the items, apparently finding no discrepancies, and herself generated the second exhibit, a register receipt to establish the total value of the items stolen less the sales tax previously included.  Therefore, unlike in <u>Bullcoming</u>, I would hold that Dishman was a "mere scrivener" of machine-generated data since, also unlike the situation in <u>Bullcoming</u>, Dishman did nothing beyond a recordation function, supervised and observed by a competent witness who did testify subject to cross-examination.  Dishman's additional testimony was unnecessary as foundation for the admission of either exhibit.  Holcomb signed the receipt attesting to the accuracy of the information recorded by Dishman, signifying her agreement with the information contained therein.  Thus, I believe that the analysis in this case is more correctly governed by the analyses of <u>Melendez-Diaz</u> and <u>Aguilar</u>.

The majority relies principally upon Holcomb's concession on cross-examination, that she did not verify that Dishman wrote down the correct item and price for every single item scanned or specifically confirm that the correct quantity of each item was recorded. However, given the totality of her testimony regarding her involvement in the preparation of these exhibits, I see no significant constitutional impact on Robertson's ability to confront her accuser. Holcomb testified that she observed the cash register display as the items were scanned and in the light most favorable to the Commonwealth, "observed that the prices were correct as [Dishman] put them on the paper" or even in the light most favorable to Robertson, "pretty much kn[e]w most of those . . . [we]re correct." In any event, Holcomb signed the register receipt attesting to the accuracy of the information. It seems to me that, even applying the erroneous standard of review of the facts utilized by the majority, to the extent that Holcomb's testimony lacks the level of specificity that Dishman may have been able to supply, any such deficiency would go to the weight given to the evidence by the fact-finder and not to whether or not Robertson's Sixth Amendment right to confrontation was honored.[10] Where "there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence."[11]

---

[10] Contrary to our required standard of appellate review, the majority dismisses Holcomb's testimony that she "pretty much kn[e]w" that the information recorded by Dishman was accurate in favor of her concession on cross-examination that she "probably" did not make sure that Dishman accurately recorded every single item. To the extent there is any inconsistency in Holcomb's testimony, it was resolved below in favor of the Commonwealth and that resolution frames my analysis, as it should that of the majority.

[11] The issue in Anderson was a Sixth Amendment Confrontation Clause challenge to the chain of custody of vaginal swab samples. The appellant in that case complained of the absence of testimony from the emergency room nurse or law enforcement officers familiar with storage protocol for the samples. This Court held that the Commonwealth is not required to bring in every witness who physically handled the samples for the certificate to be admissible and the real complaint went to the weight to be given the evidence and not to the chain of custody as appellant argued. Anderson, 48 Va. App. at 716-17, 634 S.E.2d at 378.

Anderson, 48 Va. App. at 717, 634 S.E.2d at 378. This point in Anderson is instructive in the present case. Holcomb was present and observed the creation of the challenged exhibits. She also signed the exhibit bearing witness to the value of the merchandise, and Robertson was permitted to and did cross-examine her. As noted previously, the Constitution does not require that all who participate in the preparation and creation of an exhibit testify as long as someone intimately associated with the creation and preparation of a testimonial exhibit can be cross-examined about what specifically was done and how. That is exactly what occurred here.

Thus, I disagree with the majority's analysis since there was no "surrogate testimony" in this case, which would implicate the holding in Bullcoming. On the other hand, Melendez-Diaz and our Supreme Court's decision in Aguilar are directly on point and ought to control this analysis. Similar to the facts in the record before us, in Aguilar, the supervisor who testified at trial was directly involved in the entire DNA analysis at issue and he was the one who made the conclusions expressed in the certificates of analysis that were introduced against the appellant, whereas in Bullcoming the testifying analyst played no role in the certificate introduced at trial and had not even reviewed the analysis. Any deficiencies in Holcomb's testimony regarding what she may or may not have overlooked in observing and supervising Dishman's recordkeeping goes to the weight the fact-finder may choose to assign to the evidence, and does not implicate a violation of the Confrontation Clause.

For these reasons, I would hold that the trial court did not err by admitting the exhibits based upon the foundation laid by Holcomb concerning which she was cross-examined, thereby honoring Robertson's Sixth Amendment right to confrontation.

## B. The Sufficiency of the Evidence

I also respectfully dissent from the holding and judgment of the majority with regard to Robertson's second assignment of error. Because I find no error on the part of the trial court

regarding the admission of the exhibits, they are sufficient to establish the value of the property taken by Robertson. I would therefore hold that the evidence was sufficient to support Robertson's conviction for felony shoplifting and <u>Rushing v. Commonwealth</u>, 284 Va. 270, 726 S.E.2d 333 (2012), is inapplicable.

With respect to the judgment of the majority applying our Supreme Court's recent decision in <u>Rushing</u>, and dismissing the indictment rather than remanding this case for a new trial if the Commonwealth is so advised, I acknowledge that I am bound by the holding in <u>Rushing</u> if I considered it applicable. However, this case aptly illustrates the problematic magnitude of the holding in that case. In <u>Rushing</u>, the Supreme Court of Virginia brought unnecessary and unexplained confusion to what was previously thought to be a clear principle of appellate review. In <u>Rushing</u>, our Supreme Court acknowledges that the Supreme Court of the United States held in <u>Lockhart v. Nelson</u>, 488 U.S. 33 (1988), that, "on appellate review for sufficiency of the evidence, *all* evidence in the record, whether erroneously admitted or not, is to be considered." <u>Rushing</u>, 284 Va. at 278, 726 S.E.2d at 339 (emphasis added). However, in the very next sentence our Supreme Court states

> [w]e have adopted a different standard of appellate review in Virginia. In <u>Crawford v. Commonwealth</u>, 281 Va. 84, 111-12, 704 S.E.2d 107, 123-24 (2011), we held that, on appellate review of the sufficiency of the evidence, an appellate court may *not* consider evidence illegally admitted at trial. To hold otherwise would circumvent on appeal the Constitutional protections provided to a defendant at trial.

<u>Id.</u> (emphasis in original).

The precise question presented in <u>Lockhart</u> was "whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." <u>Lockhart</u>, 488

- 25 -

U.S. at 40. In answering that question unequivocally in the affirmative, the Supreme Court of

the United States noted in Lockhart,

> a reviewing court must consider *all* of the evidence admitted by the
> trial court in deciding whether retrial is permissible under the
> Double Jeopardy Clause . . . and the overwhelming majority of
> appellate courts considering the question have agreed. The basis
> for [this] exception to the general rule [remanding for a new trial]
> is that *a reversal for insufficiency of the evidence should be treated
> no differently than a trial court's granting a judgment of acquittal
> at the close of all the evidence*. A trial court in passing on such a
> motion considers all of the evidence it has admitted, and *to make
> the analogy complete it must be this same quantum of evidence
> which is considered by the reviewing court*.

Id. at 41-42 (emphasis added). See also McDaniel v. Brown, 130 S. Ct. 665, 672 (2010) ("To

'make the analogy complete' between a reversal for insufficiency of the evidence and the trial

court's granting a judgment of acquittal, Lockhart, 488 U.S., at 42, 'a reviewing court must

consider all of the evidence admitted by the trial court,' regardless whether that evidence was

admitted erroneously, id., at 41.").[12]

Put another way, while our Supreme Court was not specific as to which "Constitutional

protections" it was referring to, it does not violate the Double Jeopardy Clause of the Sixth

Amendment to remand a case for a new trial *provided that the evidence presented to the*

*fact-finder at the original trial was sufficient as a matter of law*. The Supreme Court of the

United States should have the last word on that subject if the issue is the application of the Sixth

Amendment. Moreover, to the extent that Rushing might be construed as an implicit application

of the Double Jeopardy Clause of the Constitution of Virginia, the holding in Rushing is

internally inconsistent and confusing when considered against the long line of cases in which the

---

[12] This approach is followed in other jurisdictions for obvious reasons. See generally 6
Wayne R. LaFave, Criminal Procedure § 25.4(c), at 652 (3d ed. 2007) ("As one court put it, the
appellate court . . . is 'assessing the legal sufficiency of the evidence not at the trial that will be,
but at the trial that was.'" (citation omitted)).

Supreme Court of Virginia has expressly interpreted the constitutional rights embodied in Article I, Section 8 of the Constitution of Virginia in an entirely congruent manner with the identical language of the Bill of Rights as construed by the Supreme Court of the United States.  See, e.g., Lowe v. Commonwealth, 230 Va. 346, 348 n.1, 337 S.E.2d 273, 274 n.1 (1985); Walton v. City of Roanoke, 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963); Flanary v. Commonwealth, 113 Va. 775, 779, 75 S.E. 289, 291 (1912); and 1 A. E. Dick Howard, Commentaries on the Constitution of Virginia 182 (1974).  See also United States v. Payne, 492 F.2d 449, 459-60 (4th Cir. 1974) (Widener, J., concurring and dissenting) ("The Virginia Declaration of Rights [later enshrined as Article I, Section 8 of the current Constitution of Virginia] was the first true Bill of Rights in the modern American sense, since it is the first protection for the rights of the individual contained in a Constitution adopted by the people acting through an elected convention. . . . [I]ts importance as the source of the federal Bill of Rights may not be overemphasized. . . . Every specific guarantee in the Virginia proposal, save one, later found a place in the federal Bill of Rights which was introduced in the first Congress by Madison as proposed by Virginia herself.").

If our Supreme Court has departed from its plentiful prior jurisprudence finding no difference in the application of the double jeopardy protections provided by the identical language of both constitutions, it has not said so.  On the other hand, if Virginia has simply adopted "a different standard of appellate review," there is no constitutional or statutory bar to a retrial limited to properly admitted evidence.  By dismissing the indictment, as it did in Rushing, rather than remanding for a new trial on the original charge when there is no constitutional or statutory impediment to one, our Supreme Court appears to have assumed and exercised what amounts to legislative authority where none exists.  Nevertheless, until either the General

Assembly or the Supreme Court itself remedies this confusion, I concede that if the exhibits had been improperly admitted, this Court is compelled to follow the precedent of Rushing.

However, this leaves open the question of *how* to apply Rushing to this particular case. Having found the admissible evidence insufficient as a matter of law through the application of Rushing, the majority dismisses the indictment rather than remanding for a new trial on a charge of misdemeanor shoplifting, a charge clearly supported by the admissible evidence in this record. If there is no constitutional or statutory bar to a retrial on the original felony shoplifting charge, an application of Rushing creates the unresolved issue of the collateral consequences of the Supreme Court's holding in that case. If the federal and state constitutions and the Code of Virginia impose no bar to retrial on the original felony charge then, notwithstanding the decision of the majority, there is nothing to prevent the Commonwealth from re-indicting Robertson on the original charge of felony shoplifting and proceeding to trial on properly admitted evidence. On the other hand, if the Supreme Court of Virginia in Rushing has implicitly imposed what amounts to a judicial sanction on trial courts for improperly admitting evidence, it remains an undecided question as to whether such sanction bars reprosecution altogether or would permit retrial on a lesser-included offense for which the evidence was both admissible and sufficient. For this reason and in the absence of any further guidance from our Supreme Court regarding the rationale for its confusing holding in Rushing, the majority's decision to dismiss the indictment altogether thereby deferring the effect of any collateral consequences that may arise from an election by the Commonwealth to pursue this matter further, is the more prudent course.

Nevertheless, for all of the reasons previously stated, I would affirm the judgment of the trial court.