COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Bumgardner and Clements
Argued at Alexandria, Virginia


DANIELLE LOUISE COTTON
                                                OPINION BY
v.    Record No. 1743-00-2      JUDGE RUDOLPH BUMGARDNER, III
                                              MAY 22, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
              William H. Ledbetter, Jr., Judge

        Stacey T. Garcia, Assistant Public Defender
        (Lori M. McPherson, Senior Assistant Public
        Defender, on brief), for appellant.

        Robert H. Anderson, III, Senior Assistant
        Attorney General (Mark L. Earley, Attorney
        General, on brief), for appellee.


    A jury convicted Danielle L. Cotton of murder while in the

commission of felony child abuse and neglect in violation of

Code §§ 18.2-33[1] and -371.1.[2]  The victim was the defendant's

---

[1]     [Code] § 18.2-33.  Felony homicide defined;
        punishment. -- The killing of one
        accidentally, contrary to the intention of
        the parties, while in the prosecution of
        some felonious act other than those
        specified in §§ 18.2-31 and 18.2-32, is
        murder of the second degree and is
        punishable by confinement in a state
        correctional facility for not less than five
        years nor more than forty years.

[2]     [Code] § 18.2-371.1.  Abuse and neglect of
        children; penalty. -- A.  Any parent . . .
        responsible for the care of a child under
        the age of eighteen who by willful act . . .
causes or permits serious injury to the life

four-month-old son, Tyler, who died from shaken baby syndrome. The defendant contends (1) the felony murder doctrine creates a conclusive presumption of malice, (2) felony child abuse cannot be a predicate offense for felony murder, (3) death was not a "serious injury" as required by Code § 18.2-371.1, and (4) the evidence was insufficient to prove criminal agency. For the following reasons, we affirm.

Felony murder is the killing of another accidentally, contrary to the party's intention,[3] while in prosecution of some felonious act other than those listed in the first degree murder statute. Heacock v. Commonwealth, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984). "[T]he commission of a felony of violence

_____

or health of such child shall be guilty of a Class 4 felony. For purposes of this subsection, "serious injury" shall include but not be limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, or (vii) life-threatening internal injuries.
     B. Any parent . . . responsible for the care of a child under the age of eighteen whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

[3] "To prove a felony homicide it is not necessary that the Commonwealth prove accident/lack of intent. That language has been part of the definition of involuntary manslaughter for at least fifty years, but has never been treated as identifying elements of the offense." Roger D. Groot, Criminal Offenses and Defenses in Virginia 269 (4th ed. 1998) (footnote omitted).

manifests a person-endangering frame of mind such that malice may be imputed to the act of killing."  John L. Costello, Virginia Criminal Law and Procedure § 3.4-3, at 33 (2d ed. 1995) (footnote omitted).  "The felony-murder doctrine originated at common law and, when supported by the evidence, operates to elevate to second-degree murder a homicide committed during the commission of a felony by imputing malice to the killing." Commonwealth v. Montague, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000) (citing Heacock, 228 Va. at 403, 323 S.E.2d at 93; Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981)).

The res gestae rule restricts felony-murder to homicides "so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise."  Haskell v. Commonwealth, 218 Va. 1033, 1043-44, 243 S.E.2d 477, 483 (1978).  "To convict, there must be a connection between the felony and the death.  The connection must be found within the res gestae doctrine:  the death must be related by time, place and causal connection to the commission of the felony."  Roger D. Groot, Criminal Offenses and Defenses in Virginia 269 (4th ed. 1998 & Supp. 2000) (footnote omitted).

The felony murder doctrine classifies a homicide as second degree murder if the death is related by time, place, and causal connection to the felony.  The conduct proscribed by the felony murder statute involves the substantial risk to human life common to all other forms of malicious homicide:  intent to

kill, intent to inflict grievous bodily harm, or extreme recklessness demonstrating total indifference to human life. It does not create a presumption that shifts the burden of proof to the defendant in violation of Sandstrom v. Montana, 442 U.S. 510 (1979). The Commonwealth must prove beyond a reasonable doubt a felony that involved substantial risk to life.

Next, the defendant contends the trial court erred in permitting the crime of felony child abuse, Code § 18.2-371.1, to be the predicate felony in this felony murder prosecution. She contends death resulted from a single act of abuse, and a single act cannot form the basis for both the murder and the predicate felony. She argues the doctrine of merger prevents an assault that results in death from being the predicate felony in a felony murder charge. The act of assault, which causes death, merges into the act of murder. Permitting an assault to be a predicate felony would allow every lower degree of homicide to be elevated to murder; gradations of homicide would cease.

The merger doctrine was first enunciated in State v. Shock, 68 Mo. 552 (1878). Justice Cardozo approved it in People v. Moran, 158 N.E. 35, 36 (N.Y. 1927), as a limitation on the felony murder statute necessary to maintain the distinction between murder, which required malice, and manslaughter, which did not. Deciding whether an assault merged became an analysis of whether the assault was a lesser-included offense of murder. See People v. La Marca, 144 N.E.2d 420, 428 (N.Y. 1957).

This doctrine of merger was not widely accepted. Where adopted, the courts used the doctrine to ensure continued ranking of the various grades of homicide. The doctrine has never been applied in Virginia, and it could never apply to this case because felony child abuse is not a lesser-included offense of murder.

To determine whether felony child abuse is a lesser-included offense, we examine the two offenses and their elements in the abstract, rather than by reference to the facts of the case. Blythe v. Commonwealth, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981). "An offense is not a lesser-included offense of a charged offense unless all its elements are included in the offense charged. Stated differently, an offense is not a lesser-included offense if it contains an element that the charged offense does not contain." Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000) (citing Jones v. Commonwealth, 218 Va. 757, 759, 240 S.E.2d 658, 660, cert. denied, 435 U.S. 909 (1978)). Felony child abuse requires proof that the assailant is a person responsible for the care of a child. That requirement of a special relationship is not an element of murder. Accordingly, felony child abuse is not a lesser-included offense of murder.

The defendant also contends she cannot be convicted of felony child abuse because death is not listed as a "serious injury" in Code § 18.2-371.1. The argument ignores the fact

that the victim suffered grievous injuries that caused death. The violent shaking caused brain injury, which produced the shock, which affected vital organs, and death resulted. The injuries to the brain were serious injuries under the most constrained reading of the statutory definition.

The argument fails for a more apparent reason: it assumes the General Assembly intended to punish child abuse that caused serious injury but did not intend to punish it if it caused the most terrible consequence, death. Such a reading of any enactment violates the rules of statutory interpretation. See Smith v. Commonwealth, 26 Va. App. 620, 625, 496 S.E.2d 117, 119 (1998).

Finally, the defendant contends the evidence failed to prove she was the criminal agent. Viewing the evidence in the light most favorable to the Commonwealth, the defendant and her son lived at her father's house. The fatal injuries occurred between 11:30 p.m. and shortly after 7:30 the next morning when the defendant's father entered their bedroom and found the victim unresponsive. No one in the household saw or heard Tyler that night, and the defendant admitted no one else was with Tyler during that period. A recording of the father's call to 911 emergency services revealed the defendant saying in the background, "I killed him daddy."

A diagnostic examination of the victim revealed "multi-organ system failure." The heart and blood vessels had

been compromised, the liver was not functioning properly, and the victim was in respiratory failure. The tests confirmed the preliminary diagnosis of severe brain injury causing the shock that in turn involved injury to the other vital organs. The victim would have lost consciousness at the time the shaking occurred.

The evidence revealed shaken baby syndrome differs from other external brain injuries because of the extent of the damage. A blow to the head results in injury to the area struck. The shaken baby receives injuries throughout the brain. The injuries tend to be severe, without viable explanation, and result in retinal hemorrhaging. Shaken baby syndrome requires "sustained, violent, out of control force" that lasts at least three to five seconds. It does not result accidentally.

The injuries to Tyler could only have been inflicted by criminal agency. The defendant was the only person with him during the period when he received the injuries. The defendant stated, "I killed him daddy." The evidence permitted the jury to find that the defendant willfully abused her son so violently that death ensued. Accordingly, we affirm the conviction.

<u>Affirmed</u>.