**Affirmed and Opinion filed April 24, 2012.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

_____

## NO. 14-11-00199-CR
_____

**LAMARQUES DEVON MCWILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1230229**

## OPINION

Appellant, Lamarques Devon McWilliams, was found guilty by a jury of aggravated sexual assault and was sentenced to life in prison. On appeal, appellant contends that the trial court erred in admitting (1) expert testimony regarding a DNA analysis report based on data generated by non-testifying biologists in violation of appellant's Confrontation Clause rights and (2) hearsay testimony. We affirm.

# BACKGROUND

Chelsea Brazier testified that on the evening of August 26, 2009, she voluntarily entered the front seat of appellant's car and agreed to have intercourse in exchange for money. The encounter became nonconsensual, however, when appellant and Brazier moved to the backseat, where appellant denied Brazier's demand for money, threatened Brazier with a knife, tied Brazier's hands behind her back, pinned her to the floorboard, and drove her to a secluded location. Appellant penetrated Brazier anally and vaginally against her protests. Subsequently, appellant left Brazier in the trunk of his car. Brazier managed to free herself from the trunk and run towards lights and houses to find help.

Brazier knocked on doors of two homes, but no one answered. The third door Brazier banged on was at Jacqueline Hargrove's home. Hargrove testified that when she heard the loud banging at her door, she called the police. After the police arrived 15-20 minutes later, Hargrove opened the door and had a conversation with Brazier. According to Hargrove, Brazier asked for help and said she "was trying to be forced to do something that she didn't want to do."

Later that evening, bodily samples were taken from Brazier and the appellant. Rhonda Craig, a forensic DNA examiner in a Federal Bureau of Investigation laboratory, supervised testing of the samples and wrote the forensic lab report. She testified at trial regarding the DNA testing process and the test results. Craig testified that her role is to review new matters, determine the questions to be answered by the testing, decide what evidence will be worked on and in what order, and direct biologists to perform the tests. It is Craig's job as manager of a forensic case to review and interpret the data and write and sign the reports.

**DISCUSSION**

**A. Confrontation Clause**

In his first issue, appellant contends that because Rhonda Craig's testimony was based on data generated by non-testifying biologists, its admission violated appellant's right to confrontation. The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment Confrontation Clause applies to out-of-court statements introduced at trial. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004). Testimonial statements of a witness who is absent from trial cannot be admitted unless the witness was unable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 53–54. A forensic laboratory report created specifically to serve as evidence in a criminal proceeding is within the core class of testimonial statements covered by the Confrontation Clause; therefore, a live witness must be available for such reports to be admitted. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2709 (2011) (citing *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009)).

While *Melendez-Diaz* set forth the requirement that there be a live witness at trial to support a forensic report,[1] it did not address who qualifies as such. Texas courts of appeals have held that the testimony of a supervisor does not violate the Confrontation Clause requirement under *Melendez-Diaz*. *See, e.g., Settlemire v. State*, 323 S.W.3d 520, 522 (Tex. App.—Fort Worth 2010, pet. ref'd) (holding testimony of technical supervisor in charge of intoxilyzer machine was admissible, even though the supervisor was not in charge of the machine when defendant was arrested); *see also Hamilton v. State*, 300 S.W.3d 14, 19–21 (Tex. App.—San Antonio 2009, pet. ref'd) (holding trial court erred in permitting expert to testify regarding another expert's findings but did not err in permitting

---

[1] The prosecution in *Melendez-Diaz* introduced affidavits of lab analysts.

expert to offer his own conclusions based on other expert's data); *Parades v. State*, 14-10-00266-CR, 2011 WL 3667839, at *8–10 (Tex. App.—Houston [14th Dist] Aug. 23, 2011, pet. filed) (mem. op., not designated for publication) (holding expert witness's testimony based in part on lab work performed by others did not violate Confrontation Clause).

In *Bullcoming*, the accused was charged with driving while intoxicated. 131 S. Ct. at 2707. A forensic analyst analyzed the accused's blood sample according to specified procedures. *Id*. at 2710–11. At trial, the prosecution did not call the analyst as a witness but instead proposed to introduce his findings as a "business record" through testimony of a different scientist who was familiar with the laboratory's testing procedures but had neither observed nor reviewed the particular testing in question. *Id*. at 2711-12. The Supreme Court held that "surrogate testimony of that order" did not meet constitutional requirements. *Id*. at 2710. The accused's right is to be confronted with the analyst who made the certification. *Id*.

The *Bullcoming* Court indicated, however, that certain surrogate testimony would not violate the Confrontation Clause. Justice Sotomayor's concurring opinion emphasizes that "this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." *Id*. at 2722 (Sotomayor, J., concurring). "It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results." *Id*.; *see also Melendez-Diaz*, 129 S. Ct. at 2532 n.1 ("[Not] everyone who laid hands on the evidence must be called.").

The facts of the present case are distinguishable from those in *Bullcoming* and consistent with the exception that Justice Sotomayor identified. Rhonda Craig was a supervisor, involved with every aspect of the testing process, first by determining which samples should be tested, which tests should be conducted and in what order, then through supervision, then through analysis of the data, and lastly by writing the report. She had a

4

direct connection to the scientific test at issue. The appellant's Confrontation Clause rights were not violated by admission of Craig's testimony.

Appellant further asserts that his state Confrontation Clause right to cross-examination was violated. Tex. Const. art. 1, § 10. However, Texas courts decline to apply the state Confrontation Clause guarantee in a broader manner than the federal Confrontation Clause guarantee. *See King v. State*, 189 S.W.3d 347, 361 (Tex. App.—Fort Worth 2006, no pet.); *Murdock v. State*, 840 S.W.2d 558, 564 (Tex. App.—Texarkana 1992), *vacated on other grounds*, 845 S.W.2d 915 (Tex. Crim. App. 1993) (per curiam). Appellant's state right to cross-examination was not violated. We overrule appellant's first issue.

## B. Hearsay

In his second issue, appellant alleges that Hargrove's testimony that Brazier said she "was trying to be forced to do something that she didn't want to do" was hearsay and the trial court erred in admitting it. The State argues that Hargrove's testimony was properly admitted under the "excited utterance" hearsay exception.

The trial court has discretion to review the admissibility of an out-of-court statement under the exceptions to the general hearsay rule. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). An abuse of discretion occurs "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801. Hearsay is not admissible unless it falls into an exception provided by a statute or by the Rules of Evidence. Tex. R. Evid. 802. One such exception is for "excited utterances," *i.e.*, statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R.

Evid. 803(2). In determining whether a hearsay statement is admissible as an excited utterance, the court may look at the time that elapsed between the event and the statement. *Penry v. State*, 903 S.W.2d 715, 750–51 (Tex. Crim. App. 1995); *Lane v. State*, 174 S.W.3d 376, 382 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). However, the critical factor in determining whether a statement is an excited utterance is whether the declarant was still dominated by the emotions, fear, excitement, or pain of the event at the time of the statement. *Zuliani*, 97 S.W.3d at 596; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001).

In this case, Brazier made the statement at issue after exerting considerable energy to free herself from appellant's trunk, running towards lights, and banging on the doors of three houses (including Hargrove's) with her hands still tied. Brazier testified, "I thought I heard somebody . . . calling me, coming behind me. Because when I was running, I had seen some headlights coming towards my way. And I'm like, 'Damn, I've got to go . . . [appellant is] coming after me." Brazier was naked except for a spaghetti-strap shirt. By the time she reached Hargrove's residence, her shirt was around her waist. Approximately 15-20 minutes after she banged on Hargrove's door, the police arrived, and Hargrove opened her door. Brazier testified, "the next thing I know, I started hearing police sirens, helicopters." It was at this time that Brazier allegedly made the statement that Hargrove repeated at trial.

Given the intense nature of the events Brazier endured, it was reasonable for the trial court to conclude that she was still dominated by emotions, fear, and pain when she spoke to Hargrove. The trial court's admission of Hargrove's testimony was not an abuse of discretion. Appellant's second issue is overruled.

6

We affirm the trial court's judgment.

/s/    Martha Hill Jamison
Justice

Panel consists of Justices Boyce, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).