738 S.E.2d 531

**Latoya Mrytrise ROBERTSON**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0477–11–3.**

Court of Appeals of Virginia,
Richmond.

March 19, 2013.

Huff, J., dissented and filed statement in which Petty, J., joined.

Gregory T. Casker for appellant.

Rosemary V. Bourne, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Present: FELTON, C.J., and ELDER, FRANK, HUMPHREYS, KELSEY, PETTY, BEALES, ALSTON, McCULLOUGH, HUFF and CHAFIN, JJ.

## UPON REHEARING EN BANC

HUMPHREYS, Judge.

Latoya Mrytrise Robertson ("Robertson") appealed her conviction of felony shoplifting, in violation of Code § 18.2–103, arguing that the trial court erred by admitting two exhibits in violation of the Confrontation Clause, and that without the wrongfully admitted exhibits, the evidence was insufficient to sustain her conviction. A divided panel of this Court reversed the judgment of the Circuit Court of Pittsylvania County ("trial court"). *Robertson v. Commonwealth,* 60 Va.App. 688, 732 S.E.2d 30 (2012). By order of October 23, 2012, this Court granted a petition for rehearing en banc thereby vacating the panel opinion. *Robertson v. Commonwealth,* 61 Va.App. 65, 733 S.E.2d 155 (2012). For the following reasons, we affirm the judgment of the trial court.

## I. BACKGROUND

■ "On appeal, we view the facts established at trial in the 'light most favorable' to the prevailing party below, in this case the Commonwealth, and we grant to that party all fair inferences flowing from those facts." *Crawford v. Commonwealth*, 55 Va.App. 457, 462 n. 1, 686 S.E.2d 557, 559 n. 1 (2009) (citations omitted). In this light, the evidence established the following.

On the afternoon of January 7, 2010, Robertson purchased a large plastic storage bin and a drink from a Family Dollar store. After paying for the bin and the drink, Robertson stood at the front of the store for a little while. Then Robertson pushed the bin in a "buggy" up and down the aisles of the store. Twenty minutes later, Robertson attempted to exit the store with the bin and the buggy. Malinda Darling Holcomb ("Holcomb"), the store manager, stopped Robertson as she was almost out the door and said she needed to make sure the bin was still empty. Robertson then laid her body over the bin and crossed her arms at the wrists. Holcomb managed to flip open the lid of the bin, which was full of merchandise Robertson had not paid for. Robertson left the store with a companion, and Holcomb directed a clerk to call 911.

Holcomb took the merchandise out of the bin and put it in the buggy and pushed the buggy over to a cash register. Cindy Dishman ("Dishman"), an employee, was standing at the register and Holcomb was standing on the outside of the register, pulling items from the buggy and placing them on the counter. Holcomb directed Dishman to scan each item into the register to determine the price and to write down each item with the price on a sheet of paper. Holcomb testified that the list showed the "actual stuff that was in the [bin]." Holcomb watched the prices come up on the register, and as she observed it the prices were correct as Dishman handwrote them on the piece of paper. While Holcomb conceded on cross-examination that she probably did not verify that Dishman correctly recorded the price of every

single item on the list, Holcomb testified that she was able to see the prices of each item popping up on the register screen and she "pretty much [knew] most of those [were] correct." When counsel inquired about how Holcomb handled multiples of items, she testified, "how we did that is like I put it, if we had, if it was multiples we put [them] together and then she scanned the one to get the price and then she would write times two, or times four or whatever." [1] Holcomb then created a paper tape on an adding machine that added the prices from the handwritten list of prices she had Dishman create. Holcomb testified that the prices listed per item are the actual retail prices that the store charged for the items at the time. The trial court admitted the handwritten list of items and prices along with the adding machine tape as Commonwealth's Exhibit 1.

In April 2010, at the request of the investigating officer, Holcomb and Dishman created a voided receipt from the list of stolen merchandise in Exhibit 1. The voided receipt was entered into evidence as Exhibit 2. Holcomb testified that the total sum of the merchandise in Exhibit 2 was less than in Exhibit 1 because the prices of some of the items had been discounted and items that had been discontinued also rang up cheaper. In preparing Exhibit 2, Holcomb circled and marked certain items as "discontinued items." Both Holcomb and Dishman signed Exhibit 2.

Robertson's counsel objected to the introduction of both exhibits, arguing that "while [Holcomb] was present and involved, she was not checking to [ ] be sure that what was

---

1. In addition to this testimony, we note that Holcomb repeatedly testified to what "we" did, referring to herself and Dishman, in jointly preparing the exhibits. As to Exhibit 1 she testified, "if it was two Gains, *we* took the Gains together, and if it was like two Ivory, *we* took the Ivory together"; *"We* first wrote it all down on this little sheet right here"; "when *we* put it on the register how much, [sic] when *we* did the price inquiry that's how much [came] up"; *"we* added that times two"; and *"We* just put that total there." Her testimony on Exhibit 2 included, "when Deputy Marcus came back, I did [an] original receipt, he told me to do it and then what *we* did is *we* did it like, like it was being rung up, and *we* avoided [sic] it."

showing on the screen was being correctly [ ] set forth on the piece of paper" and therefore "the person who prepared the document is not present to be subject to cross examination." The trial court ruled that Holcomb was present, participating, and observing the creation of the exhibits, and her inability to say that she checked the accuracy of every price as Dishman recorded it goes to the weight the court assigns the evidence. The trial court admitted both exhibits into evidence.

## II. ANALYSIS

### A. The Confrontation Clause

■   Robertson argues on appeal that the trial court erred by admitting the Commonwealth's Exhibits 1 and 2 in violation of the Confrontation Clause.   In essence, the issue before us is essentially whether or not the Confrontation Clause of the Sixth Amendment requires the Commonwealth to tender for cross-examination every single person involved in the joint preparation of an exhibit.   On appeal, constitutional arguments present questions of law that appellate courts review *de novo. Crawford v. Commonwealth,* 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).

■   The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."   " '[T]he principal evil at which the Confrontation Clause was directed' ... 'was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.' " *Williams v. Illinois,* —— U.S. ——, ——, 132 S.Ct. 2221, 2242, 183 L.Ed.2d 89 (2012) (quoting *Crawford v. Washington,* 541 U.S. 36, 50, 124 S.Ct. 1354, 1363, 158 L.Ed.2d 177 (2004)).

■   Prior to *Crawford,* the United States Supreme Court "took the view that the Confrontation Clause did not bar the admission of an out-of-court statement that fell within a firmly rooted exception to the hearsay rule." *Williams,* —— U.S. at ——, 132 S.Ct. at 2232 (citing *Ohio v. Roberts,* 448 U.S. 56, 66,

100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). The *Roberts* test allowed the jury "to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability." *Crawford,* 541 U.S. at 62, 124 S.Ct. at 1370. In *Crawford,* the Court overruled *Roberts* and held that where *testimonial* evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. at 1374. Statements are "testimonial when the circumstances objectively indicate that there is no [ ] ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006).

■■■■ Clearly the two exhibits introduced against Robertson are testimonial in nature. Holcomb and Dishman jointly created the two exhibits in this case for the express purpose of establishing the total value of the stolen items at the later prosecution of Robertson for felony shoplifting. Thus, Robertson had a right under the Sixth Amendment to confront the source of those exhibits. However, given the collaborative nature of the way both Holcomb and Dishman jointly prepared these exhibits, we conclude that Robertson had the opportunity to and did confront Holcomb as a source of these exhibits, and thus no violation of Robertson's right to confront the evidence against her occurred.

The Supreme Court of the United States has held that, while exhibits may constitute testimonial evidence, there is no violation of the Confrontation Clause as long as the accused is confronted with "*a live witness competent to testify to the truth of the statements made in the [exhibit].*" *Bullcoming v. New Mexico,* — U.S. —, —, 131 S.Ct. 2705, 2709, 180 L.Ed.2d 610 (2011) (emphasis added) (citing *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)). In *Melendez–Diaz,* the United States Supreme Court held that a defendant is entitled to confront the analysts who prepared affidavits pertaining to substance analyses that were

introduced against him at trial. *Melendez–Diaz,* 557 U.S. at 311, 129 S.Ct. at 2532. However, the Court specified,

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of a sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. [While it is the prosecution's obligation] to establish the chain of custody, this does not mean that everyone who laid hands on the evidence must be called. . . . It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live.

*Id.* at 311 n. 1, 129 S.Ct. at 2532 n. 1 (internal quotations and citations omitted).

In *Aguilar v. Commonwealth,* 280 Va. 322, 699 S.E.2d 215 (2010), the Supreme Court of Virginia held that the Confrontation Clause was satisfied when the supervising analyst who prepared the certificates of DNA analysis testified at a rape trial, even though an assistant analyst upon whose work he relied did not testify. *Id.* at 337, 699 S.E.2d at 222. While the supervisor relied on the assistant's DNA extraction, the supervisor was directly involved in the entire DNA analysis at issue and he was the person who drew the conclusions expressed in the certificates of analysis. *Id.* at 335, 699 S.E.2d at 221. The Court relied on the *Melendez–Diaz* footnote reproduced above, and quoted the Seventh Circuit, " 'the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself.' " *Id.* at 335, 699 S.E.2d at 222 (quoting *United States v. Turner,* 591 F.3d 928, 933 (7th Cir.2010)). The Court further stated, "the Sixth Amendment does not require that every person who had some role in performing a forensic analysis, or whose work upon which the ultimate conclusions depend, testify at trial." *Id. See also Anderson v. Commonwealth,* 48 Va.App. 704, 716 n. 5, 634 S.E.2d 372, 377 n. 5 (2006) ("*Crawford* has no applicability to out-of-court *conduct* observed by, relied upon, or noted by a

witness who does appear at trial and subjects his testimony to cross-examination." (emphasis in original)).

In the present case, Holcomb, the store manager, testified at trial regarding the preparation of the handwritten list of stolen merchandise with their corresponding prices and the generation of the receipt from the cash register. Holcomb testified to the procedure employed to create Exhibit 1. In Holcomb's presence and under her direction, Dishman scanned the items into her cash register and wrote down the information produced by the register concerning a description of each item and the corresponding price. Holcomb described in detail how they grouped multiples of the same item on the counter and how Dishman multiplied the scanned price times two or three, as necessary for such multiple items. In the light most favorable to the Commonwealth as the party that prevailed below, Holcomb testified on direct examination that she was watching the prices come up as she pulled the items from the buggy and observed that the prices were correct as Dishman put them on the paper. Holcomb also affirmed that the prices listed per item are the "actual retail prices that [the] store charged for those items at that time." Additionally, Holcomb created the adding machine tape attached to Exhibit 1 where she added the prices of the individual items to determine the total value of the stolen merchandise.

Holcomb and Dishman also worked together to create Exhibit 2, a voided receipt generated on Dishman's register from the handwritten list. Holcomb's testimony evidenced her involvement when she said that she had circled certain items on the receipt and marked them as "discontinued items" and that the price of other items had been reduced by the time they created the receipt. Further, both Holcomb and Dishman signed the receipt. Thus, the record reflects that while Dishman was the person who actually recorded the items and noted the prices reported by the cash register scan, Holcomb was present and directed, supervised, and observed the creation of the list of stolen items, and Holcomb created the adding machine tape. Similarly, Holcomb and Dishman collaborated in preparing the cash register receipt reflecting the

value of those items. Holcomb's repeated testimony to what "we" did to prepare both exhibits emphasizes the collaborative nature of their efforts.

■ As noted in *Melendez–Diaz* and *Aguilar,* the Sixth Amendment does not require that everyone involved in the preparation of an exhibit testify as a witness at trial. Neither does the Confrontation Clause demand that everyone whose testimony *might* be relevant be required to testify. Therefore, the fact that only Holcomb, and not Dishman, testified to the manner in which the two exhibits were created does not violate the Confrontation Clause.

The United States Supreme Court's decision in *Bullcoming* does not change this conclusion. In *Bullcoming,* the Supreme Court specifically noted that it was dealing with a very narrow issue not factually replicated here. Bullcoming was arrested for driving while intoxicated, and the principal evidence against him was a lab report certifying his blood alcohol concentration (BAC). *Bullcoming,* —— U.S. at ——, 131 S.Ct. at 2709. At trial, the prosecution did not call the analyst who signed the certification; instead the prosecution called another analyst who was familiar with the lab's testing procedures but who had not participated in or observed the test on Bullcoming's sample. *Id.* The testifying analyst had not even reviewed the analysis of the performing analyst that was introduced at trial. *Id.* at ——, 131 S.Ct. at 2712. The narrow question decided by the Court was whether

> the Confrontation Clause permit[s] the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst *who did not sign the certification or personally perform or observe the performance of the test reported in the certification.*

*Id.* at ——, 131 S.Ct. at 2713 (emphasis added). The Court rejected the reasoning of the New Mexico Supreme Court that the testifying analyst could substitute for the performing analyst because he was qualified as an expert with respect to the testing device used in the analysis and the lab procedures

employed. The Court noted that the performing analyst was more than a "mere scrivener" and denounced such "surrogate testimony," as the testifying analyst could not convey what the performing analyst knew or observed about the particular test the certification concerned. *Id.* at ——, 131 S.Ct. at 2714. "These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross examination." *Id.* Further, the testifying analyst conceded that "he played no role in producing the BAC report and did not observe any portion of [the performing analyst's] conduct of the testing." *Id.* at ——, 131 S.Ct. at 2722 (Sotomayor, J., concurring) (noting that *Bullcoming* "is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue").[2]

*Bullcoming* is inapplicable to the present case since Holcomb only testified to what *she* did and what she observed Dishman do under her direct observation and supervision. Unlike the situation in *Bullcoming*, Holcomb was present and supervised Dishman; Holcomb handed the stolen items to Dishman who acted as a "mere scrivener" when she scanned the items into the register and recorded the item description and price as reported by the register. Holcomb superintended the preparation of the list of stolen merchandise, checked the accuracy of "most" of the items as they were scanned, apparently finding no discrepancies, and participated in generating the second exhibit, a register receipt to establish the total value of the items stolen. Therefore, unlike the challenged testimony in *Bullcoming*, Holcomb testified to her

---

**2.** *See United States v. Summers*, 666 F.3d 192, 201–04 (4th Cir.2011) (the Confrontation Clause did not require the lab analyst who produced raw data to be present at trial for the appellant to confront him); *cf. United States v. Ignasiak*, 667 F.3d 1217, 1230–31 (11th Cir.2012) (Confrontation Clause violation where the doctor who testified at trial did not "personally observe or participate" in the autopsies); and *United States v. Ramos–Gonzalez*, 664 F.3d 1, 5 (1st Cir.2011) (interpreting *Bullcoming* and stating, "where a testimonial certified forensic lab report is offered for its truth as evidence in a criminal prosecution, the accused has at least the right to confront the scientist who performed, observed, or supervised the analysis").

firsthand knowledge of the creation of the exhibits and did not provide "surrogate testimony." [3]  Dishman did nothing beyond a recordation function, supervised and observed by a competent witness who did testify subject to cross-examination. Dishman's additional testimony was unnecessary as foundation for the admission of either exhibit.  Holcomb signed the receipt attesting to the accuracy of the information recorded by Dishman, and signifying her agreement with the information contained therein.

Thus, the analysis in this case is governed by the analyses of *Melendez–Diaz* and *Aguilar*.  Similar to the facts in the record before us, in *Aguilar*, the supervisor who testified at trial was directly involved in the entire DNA analysis at issue and he was the one who made the conclusions expressed in the certificates of analysis that were introduced against the appellant.  To the contrary, in *Bullcoming* the testifying analyst played no role in the certificate introduced at trial and had not even reviewed the analysis.  Any deficiencies in Holcomb's testimony on cross-examination regarding what she may or may not have overlooked in observing and supervising Dishman's recordkeeping is certainly relevant to the weight the factfinder may choose to assign to the evidence, but it does not implicate a violation of the Confrontation Clause.

There is no Sixth Amendment Confrontation Clause violation where, as here, an exhibit is jointly prepared, and at least one of the proponents intimately involved in the preparation of the exhibit is subject to cross-examination.  To conclude to the contrary would blur the distinction between the weight a

---

3.  The Court of Appeals of Texas has similarly distinguished *Bullcoming* when it determined that the appellant's Confrontation Clause rights were not violated by the admission of the testimony of Rhonda Craig, who was the supervising forensic DNA examiner in the case.  *McWilliams v. State*, 367 S.W.3d 817, 820 (Tex.App.—Houston 2012).  The court found that Craig was a supervisor, involved in "every aspect of the testing process, first by determining which samples should be tested, which tests should be conducted and in what order, then through supervision, then through analysis of the data, and lastly by writing the report.  She had a direct connection to the scientific test at issue." *Id.*

factfinder may choose to give to the evidence and the constitutional issues presented in a Confrontation Clause analysis. Thus, the trial court did not err by admitting the exhibits based upon the foundation laid by Holcomb concerning which she was cross-examined, thereby honoring Robertson's Sixth Amendment right to confront a witness intimately involved in the preparation of the exhibits.

### B.   Sufficiency of the Evidence

■  Robertson argued that without the exhibits, the Commonwealth failed to prove that the value of the merchandise was over two hundred dollars, and thus the evidence was insufficient to prove the crime of felony shoplifting. Having found that the exhibits were properly admitted at trial, and because the evidence establishes that the value of the merchandise was at least two hundred dollars, the minimum required by Code § 18.2–103, we find that the evidence was sufficient to support a conviction of felony shoplifting.

### III.   CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

HUFF, J., with whom PETTY, J., joins, dissenting.

I respectfully dissent for the reasons set forth in the panel majority opinion. *See Robertson v. Commonwealth,* 60 Va. App. 688, 732 S.E.2d 30 (2012).