COURT OF APPEALS OF VIRGINIA

Present:  Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

DAVID MICHAEL SCHMIDT

MEMORANDUM OPINION* BY
v.      Record No. 1104-16-4                    JUDGE ROSSIE D. ALSTON, JR.
                                                JANUARY 23, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy C. Hudson, Judge

Crystal A. Meleen (John A. Keats; Keats & Meleen, PLC, on
brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


David Michael Schmidt ("appellant") appeals his convictions of felony child abuse and

felony murder, after a jury found him guilty in the Circuit Court of Prince William County ("trial

court").  On appeal, appellant asserts (1) that the trial court erred by admitting an autopsy report

containing a portion created by a non-testifying witness, and (2) that his convictions cannot stand

because they violate the Double Jeopardy Clause.  For the reasons stated below, we disagree and

affirm the trial court.

BACKGROUND

On August 5, 2013, Officer Jacob Davis ("Davis") of the Haymarket Police Department

was dispatched to a residence on a report of an unresponsive infant.  Davis found the infant in an

upstairs room where appellant was performing chest compressions.  Appellant stated that R.S.

suddenly stopped breathing while appellant was changing his diaper.  The infant was R.S.,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appellant's son. Davis observed that R.S. was a bluish-green color and that his eyes were open in a blank stare. Davis noticed no other signs of visible trauma. Davis and another officer began performing lifesaving efforts while waiting on an ambulance. R.S. was transported to the emergency room, where physicians ordered multiple tests including a CT scan of R.S.'s head. The scan revealed bleeding on the brain, otherwise known as a subdural hematoma. The ER physician opined that the hematoma was subacute, meaning it had occurred "somewhere between 24 hours and three weeks" prior.

R.S. was transferred to the Pediatric Intensive Care Unit ("PICU") at Fairfax INOVA Hospital, where attending physicians examined his condition. Dr. William Dockery ("Dr. Dockery") performed the primary exam and noted an absence of any apparent external injury or trauma. Dr. Dockery performed tests on R.S. and found no brain activity whatsoever – R.S. did not respond to painful stimuli, he never opened his eyes, and he never moved any of his extremities. Another CT scan of R.S.'s head showed subdural blood between the brain and skull, as well as brain swelling. Technicians also performed a chest x-ray and Dr. Dockery observed healed rib fractures on R.S.'s right side, which he classified as indicative of possible previous trauma. When asked, both appellant and R.S.'s mother provided no explanations for the healed fractures. A few days later, doctors removed R.S. from life support, and he died.

Detectives began investigating the circumstances and learned that appellant was R.S.'s primary caretaker on the date of the incident. Appellant reported nothing unusual about that day – he had fed and changed R.S.'s diaper during the morning and had him do "tummy time."[1] Appellant stated that during the afternoon diaper change, R.S.'s legs stiffened, his arms began flailing, and then R.S. became nonresponsive.

---

[1] "Tummy time" occurs when a parent places a baby on its stomach to facilitate the development of the baby's neck and shoulder muscles.

After an investigation, local law enforcement charged appellant with felony child abuse and felony murder based on the theory that R.S. sustained his injuries due to "shaken baby syndrome." The matter was set for a jury trial.

Dr. Dockery testified that after considering R.S.'s symptoms, he concluded based on a high degree of medical certainty that R.S. had suffered a "severe catastrophic trauma-type injury." Dr. Dockery opined that the trauma was so severe that unless appellant could provide another explanation for the injury, it was probably caused by a violent shaking movement during which R.S.'s head whipped back and forth so violently that the blood vessels between the brain and skull sheared and caused blood leakage, resulting in the subdural hematoma.

Dr. Constance DiAngelo ("Dr. DiAngelo"), the principal author of the autopsy report on R.S., testified that the head injury played a direct role in R.S.'s death and stated that some blunt force trauma had occurred and caused subdural bleeding. During the course of the autopsy investigation, Dr. DiAngelo contacted Dr. Bennet Omalu ("Dr. Omalu"), an internationally-renowned neuropathologist, and asked him to conduct an additional analysis on samples taken from R.S.'s brain. Dr. Omalu prepared stain slides of samples taken from R.S.'s brain, which were sent to his lab in Lodi, California. Dr. Omalu later provided his observations to Dr. DiAngelo, which documented various data findings but contained no conclusions about cause of death or the relative age of the brain injuries. Dr. DiAngelo included Dr. Omalu's notes in her final autopsy report.

In addition to Dr. Dockery and Dr. DiAngelo, the parties each called additional expert witnesses at trial, but Dr. Omalu was not among them – he did not testify nor was he subpoenaed by either party. While the various experts disagreed on four specific medical findings, they agreed on many others, including the existence of subdural bleeding. The experts markedly disagreed that the brain injuries were caused by abusive head trauma or "shaken baby

- 3 -

syndrome," as well as when the injuries were sustained.  None of the experts presented by the Commonwealth or the appellant ever referenced Dr. Omalu's report.

At the conclusion of the jury trial, the jury convicted appellant of felony child abuse and felony murder and recommended eleven years of incarceration, which the trial court imposed. This appeal followed.

ANALYSIS

I.  Confrontation Clause

Appellant's first assignment of error argues that the trial court erred in admitting the autopsy report in violation of the Confrontation Clauses of the United States and Virginia Constitutions.  We disagree.

A.  Admission of the Autopsy Report Did Not Violate the Confrontation Clause

Appellant's first assignment of error asserts that the trial court violated his constitutional rights under the Confrontation Clause by admitting the autopsy report, because a portion of it was prepared by Dr. Omalu, a witness that did not testify at trial.

Constitutional arguments present questions of law that this Court reviews *de novo*. Magruder v. Commonwealth, 275 Va. 283, 289, 657 S.E.2d 113, 115 (2008); Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).  "When reviewing the sufficiency of the evidence to support a conviction, [an appellate c]ourt will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."  Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).

The Sixth Amendment to the United States Constitution provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

witnesses against him." U.S. Const. amend VI.[2]  Between 1980 and 2004, courts addressed

Confrontation Clause challenges under the test enunciated by the United States Supreme Court in

Ohio v. Roberts, 448 U.S. 56, 66 (1980), which allowed the admission of a non-testifying

witness' statements if those statements could be considered "reliable" pursuant to a judicial

determination.

In Crawford v. Washington, 541 U.S. 36, 51-52 (2004), the United States Supreme Court

abandoned the Roberts test and classified certain specific types of evidence as "testimonial."

Under Crawford, when evidence is testimonial, it cannot be introduced at trial without a

testifying witness unless that witness is unavailable and the defendant previously had an

opportunity to cross-examine the witness on that evidence. Id. at 53-54.  Testimonial evidence is

provided through "witnesses against the accused – in other words, those who bear testimony.

Testimony, in turn, is typically [a] solemn declaration or affirmation made for the purpose of

establishing or proving some fact."  Id. at 51 (internal quotations omitted) (alteration in original).

Thus, when considering a challenge to evidence allegedly admitted in contravention of the

Crawford definition, the Court must initially determine whether the evidence is "testimonial" or

not because evidence that is "nontestimonial" may potentially be admitted without a witness.

Since it decided Crawford, the United States Supreme Court has authored two other

significant decisions that explore the definition of "testimonial."  In 2009, the United States

Supreme Court decided Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  While Crawford

involved the admission of oral statements, Melendez-Diaz considered whether forensic

certificates of analysis, scientific documents produced after laboratory testing of substances, are

"testimonial."  Id. at 307.  The certificates of analysis in Melendez-Diaz confirmed that a

---

[2] Likewise, the Bill of Rights of the Virginia Constitution provides, in relevant part, "[t]hat in criminal prosecutions a man hath a right . . . to be confronted with the accusers and witnesses."

substance recovered from the defendant was cocaine.  Id. at 308.  The Court concluded that the certificates were "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" that being whether the defendant possessed a controlled substance.  Id. at 310 (quoting Crawford, 541 U.S. at 51).

Two years later, the United States Supreme Court addressed whether a certificate of analysis could be admissible if the testifying analyst "did not sign the certification or personally perform or observe the performance of the test reported in the certification."  See Bullcoming v. New Mexico, 564 U.S. 647, 657 (2011).  The Court held that such "surrogate testimony" does not comport with the requirements of the Confrontation Clause because the "testifying analyst could not convey what the performing analyst knew or observed about the particular test the certification concerned," limiting the defendant's ability to cross-examine on that evidence. Robertson v. Commonwealth, 61 Va. App. 554, 564, 738 S.E.2d 531, 536 (2013) (*en banc*).

Applications of the principles established in Melendez-Diaz and Bullcoming have evolved in Virginia jurisprudence.  In Aguilar v. Commonwealth, 280 Va. 322, 335, 699 S.E.2d 215, 222 (2010) (citing Melendez-Diaz, 557 U.S. at 311 n.1),[3] the Supreme Court of Virginia held that "the Sixth Amendment does not require that every person who had some role in performing a forensic analysis, or whose work upon which the ultimate conclusions depend, testify at trial."  Aguilar asserted that the trial court violated his Confrontation Clause right by admitting certificates of analysis without requiring the testimony of two forensic analysts who

---

[3] Appellant also quotes Melendez-Diaz in asserting that Dr. Omalu still should have been called to testify because he generated his report "under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial." Melendez-Diaz, 557 U.S. at 310-11.  Appellant specifically states "that anyone playing a role in the autopsy would reasonably expect to testify."  This argument, however, ignores Aguilar's clear holding – that the Confrontation Clause does not demand that *every* individual who played some role in an analysis be summoned to testify at trial.  See Aguilar, 280 Va. at 335, 699 S.E.2d at 222.

had "played preliminary roles in the DNA analysis." Id. at 326, 699 S.E.2d at 216. The Court rejected his argument, reasoning that the only "declaration[s] or affirmation[s] contained" within the certificates were those of the testifying witness. Id. at 333, 699 S.E.2d at 220 (alterations in original). The testifying witness acted as a supervisor to the other two analysts, and as supervisor she formed the conclusions contained within the certificates, and she testified at trial; thus negating any potential constitutional violation. Id. at 335, 699 S.E.2d at 221.

This Court addressed a similar issue in Robertson v. Commonwealth. 61 Va. App. at 557-58, 738 S.E.2d at 532-33. In Robertson, the trial court admitted two exhibits listing the prices and names of various items that the defendant had attempted to steal from a store. Id. The store manager testified that she "watched the prices come up on the register" as they were scanned in, and "observed [that] the prices were correct as [the cashier] handwrote them on the piece of paper." Id. at 557, 738 S.E.2d at 533. We held that the Confrontation Clause is not offended when "an exhibit is jointly prepared, and at least one of the proponents intimately involved in the preparation of the exhibit is subject to cross-examination." Id. at 565, 738 S.E.2d at 537. "[Even though] exhibits may constitute testimonial evidence, there is no violation of the Confrontation Clause as long as the accused is confronted with '*a* live witness competent to testify to the truth of the statements made in the [exhibit].'" Id. at 560, 738 S.E.2d at 534 (quoting Bullcoming, 564 U.S. at 651) (emphasis in original). Thus, no violation occurred in Robertson because the defendant had ample opportunity to address "[a]ny deficiencies in [the store manager's] testimony on cross-examination regarding what she may or may not have overlooked in observing and supervising" the exhibit's preparation. Id. at 565, 738 S.E.2d at 537. We noted that this scenario "is certainly relevant to the weight the factfinder may choose to assign to the evidence, but it does not implicate a violation of the Confrontation Clause." Id.

We find that Aguilar and Robertson control here, and accordingly we conclude that no constitutional violation occurred. The information contained in Dr. Omalu's report is merely observational data collected during his neuropathological examination of R.S.'s tissue and organs. Nowhere in the report did Dr. Omalu opine about a probable cause of death, nor did he render any estimation about the age of R.S.'s injuries.

Just as in Aguilar, nothing within Dr. Omalu's report can be considered a "solemn declaration" or an "affirmation" of an element of an offense, as occurred in Melendez-Diaz, and Robertson. Appellant was confronted at trial with the author of the autopsy report, Dr. DiAngelo. Dr. DiAngelo conducted the autopsy on the infant child, observed Dr. Omalu when he prepared samples, reviewed Dr. Omalu's analysis, and later authored the autopsy report, which contained *her* conclusions on cause of death and the approximate age of R.S.'s injuries. At trial, she testified about those conclusions without reference to Dr. Omalu's report, relying on her own personal observations of R.S.'s brain and medical records. Furthermore, she was available for appellant to cross-examine regarding the portion of the report submitted by Dr. Omalu. In his brief, appellant also cited to case law from other states to bolster his argument that the admission of the autopsy report was error. However, upon closer review, the cases do not support appellant's claim for various reasons.[4]

---

[4] See New Mexico v. Jaramillo, 282 P.3d 682, 684 (N.M. 2011) (error due to a defendant's lack of opportunity to cross-examine the primary author of a report); Colorado v. Merritt, 2014 COA 124, *46 (2014) (no error when witness other than the report's author testified because testimony was based on alternative observations); Pennsylvania v. Brown, 139 A.3d 208, 217 (Pa. Super. Ct. 2016) (no error when witness other than report's author testified because the witness' conclusions were independent of the report); Lee v. Texas, 418 S.W.3d 892, 894 (Tex. Ct. App. 2013) (error when defendant did not have opportunity to impeach report's author, when the author had been indicted for felony perjury).

In sum, appellant's arguments that the autopsy report's admission violated his Confrontation Clause right do not persuade us, even on *de novo* review. We hold that the trial court did not err in admitting the report.

### B. Appellant Waived Challenge to Constitutional Violation

Next, we deem it prudent to address whether appellant waived his right to challenge the alleged constitutional violation on appeal. This issue concerns a consideration of the approbate-reprobate bar and invited error doctrine.[5] The Supreme Court of Virginia has stated that "a party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong." Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009). We have recognized that courts often conflate the two concepts, and this Court has also struggled to find agreement on their proper application. See Harvey v. Commonwealth, 67 Va. App. 336, 348-54, 796 S.E.2d 428, 434-39, reh'g en banc granted, 67 Va. App. 567, 797 S.E.2d 801 (2017); see also supra n.5.

In Harvey, this Court attempted to distinguish the concepts by writing:

> [t]he approbate-reprobate bar allows the opposing party and the courts to rely on the position first taken when one party affirmatively assumes inconsistent legal positions on their own behalf. Alternatively, the invited error doctrine allows an appellate court to consider errors of law as waived when a party "attempts to take advantage of the situation created by his own wrong."

---

[5] Virginia's jurisprudence on this issue remains fluid – in October 2016, this Court split 6-5 in Dufresne v. Commonwealth, 66 Va. App. 644, 791 S.E.2d 335 (2016) (*en banc*), and our Supreme Court has granted certiorari, 2017 Va. LEXIS 88 (Va. June 8, 2017). In Dufresne, this Court disagreed on whether defense counsel invited error during a "combined closing argument and second motion to strike the evidence" by "requesting" that the trial court reduce a charge to grand larceny, and then at a later post-trial hearing, moving the trial court to further reduce it to petit larceny because the defendant could not legally be convicted of grand larceny. Id. at 650, 791 S.E.2d at 338. The dissent strongly objected to the majority's characterization of defense counsel's statement as a "specific and direct request to convict her of grand larceny." Id. at 663, 791 S.E.2d at 344.

Id. at 349, 796 S.E.2d at 435 (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006) (citations omitted)).

Harvey considered whether the approbate-reprobate bar or invited error doctrine were triggered by defense counsel after she objected to a trial continuance based on speedy trial grounds but then "agreed" to the new trial date suggested by the Commonwealth and then offered to her as an option by the trial court. Id. at 343, 796 S.E.2d at 432. The issue centered on the interpretation of two orders entered by two different judges in the trial court, one in which the trial judge who heard the matter explicitly noted defense counsel's objection based upon speedy trial consideration, and the other by a different judge which overruled the preservation of that objection. Id. at 350-51, 796 S.E.2d at 435-36. The dissent argued that the case could have been easily resolved under Baker v. Commonwealth, 25 Va. App. 19, 24, 486 S.E.2d 111, 113 (holding that "[p]roviding available dates and agreeing to a trial date that is outside the statutory period are not actions constituting a waiver of the statutory speedy trial requirement"), aff'd on reh'g en banc, 26 Va. App. 175, 493 S.E.2d 687 (1997), but that the recently-decided Dufresne v. Commonwealth, 66 Va. App. 644, 791 S.E.2d 335 (2016), dictated the opposite result. Harvey, 67 Va. App. at 355, 796 S.E.2d at 438 ("intellectual honesty compels me to conclude that our *en banc* holding in Dufresne implicitly overrule[d] our *en banc* judgment in Baker") (Humphreys, J., dissenting). However, the majority in Harvey held that the trial court erred in ruling that the defendant waived his right to a speedy trial because defense counsel "consented" to a new trial date. Id. at 352-53, 796 S.E.2d at 436-37. Specifically, this Court held that defense counsel "did not affirmatively assume inconsistent legal positions" by doing such. Id. at 352, 796 S.E.2d at 436. Therefore, this Court determined that neither doctrine applied.

Here, however, the approbate-reprobate bar does apply, because appellant has assumed contradictory positions on the same evidence during the course of the case. Because we already

- 10 -

determined that the admission of the autopsy report did not violate the Confrontation Clause,[6] the remaining balance of appellant's argument is that the report should have been excluded from the jury's consideration because "subjects of great dispute were included" within it and appellant was deprived of an opportunity to cross-examine Dr. Omalu. Critically though, both the Commonwealth's and appellant's experts testified on the same subject matter included in Dr. Omalu's notes – the brain injuries incurred by R.S. The experts' testimony centered on disputed medical issues of "acute and subdural hemorrhages," "[t]hick fibrocystic subdural membrane," "[a]trophic corpus callosum," and "retinal findings." The trial court appropriately found that the causes of the injuries and the time of their infliction were factual determinations in the form of a typical "battle of the experts" that the jury should resolve. See Atkins v. Commonwealth, 272 Va. 144, 154, 631 S.E.2d 93, 98 (2006) ("[i]t was therefore the jury's task to resolve the conflicts in the expert testimony and to decide which expert or experts were worthy of belief").

The problem infecting appellant's argument is that the parties' respective expert witnesses, though disagreeing in their interpretations, all testified on *cumulative factual material*. This issue is similar to the principle we discussed in Isaac v. Commonwealth, 58 Va. App. 255, 708 S.E.2d 435 (2011). In Isaac, we stated that "when a litigant 'unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence.'" Id. at 260, 708 S.E.2d at 437 (quoting Combs v. Norfolk & W. Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998)). This standard applies "when the defendant presents in his case in chief the same or

_____

[6] Dr. Omalu was not a necessary witness, therefore the Commonwealth was under no obligation to subpoena him for trial. Appellant's trial counsel would have known prior to the trial that no subpoena had issued and certainly could have issued a subpoena to Dr. Omalu on his own behalf. However, the record does not reflect that appellant ever took such an action. Accordingly, appellant's argument concerning Dr. Omalu's unavailability is further undermined.

similar evidence he previously objected to in order to explain it away or to offer a more favorable interpretation." Id. at 262, 708 S.E.2d at 438. Accordingly, we held that "when a defendant's own evidence is substantially the same as his opponent's, he can complain on appeal about neither." Id. at 263, 708 S.E.2d at 439.

The same scenario presents itself here. Appellant objected to the introduction of evidence that discussed medical information and data that he later sought to re-interpret in his own favor through his experts. Accordingly, we find that appellant has assumed contradictory legal positions, and his argument is barred by the approbate-reprobate doctrine.

## II. Double Jeopardy

In appellant's second assignment of error, he asserts that his convictions of both felony child abuse and felony murder violate the Double Jeopardy Clauses of the United States and Virginia Constitutions. This Court reviews double jeopardy claims de novo. See Johnson v. Commonwealth, 58 Va. App. 303, 322, 709 S.E.2d 175, 185 (2011).

The Fifth Amendment provides, in relevant part, that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[7] The seminal case utilized by courts in determining whether two offenses implicate the Double Jeopardy Clause is Blockburger v. United States, 284 U.S. 299, 304 (1932). The Blockburger test requires a court to determine "whether there are two offenses or only one, [and] whether each provision requires proof of a fact which the other does not." Id.

Before conducting a Blockburger analysis, courts must acknowledge that "whether a punishment offends double jeopardy turns on a determination of 'what punishments the Legislative Branch has authorized.'" Holley v. Commonwealth, 64 Va. App. 156, 163, 765

---

[7] The Bill of Rights of the Virginia Constitution provides, in relevant part, "[t]hat in criminal prosecutions a man . . . shall not . . . be put twice in jeopardy for the same offense."

S.E.2d 873, 876 (2014) (quoting Whalen v. United States, 445 U.S. 684, 688 (1980)). The Court

first considers "whether 'the legislative intent is clear from the face of the statute or the

legislative history.'" Andrews v. Commonwealth, 280 Va. 231, 284, 699 S.E.2d 237, 267 (2010)

(quoting Garrett v. United States, 471 U.S. 773, 779 (1985)). This inquiry curtails the possibility

that courts will succumb to the conclusion "that any differentiation in the language defining the

elements of an offense would authorize multiple punishments for otherwise undifferentiated

conduct." Id. at 284, 699 S.E.2d at 268.

First, we turn to the language of the statutes at issue here.

The felony child abuse statute provides, in relevant part:

> Any parent, guardian, or other person *responsible for the care of a child under the age of 18* who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony.

Code § 18.2-371.1(A) (emphasis added).

The felony murder statute provides:

> The killing of one accidentally, contrary to the intention of the parties, *while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32*, is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five years nor more than forty years.

Code § 18.2-33 (emphasis added).

It is clear from the language of the two statutes that they apply to distinct forms of

actions. To be sure, felony child abuse criminalizes certain specific conduct by individuals who

are responsible for minors. In contrast, the General Assembly intended for the felony murder

statute to apply in a wide variety of situations, and prosecutors have implemented it accordingly.

See, e.g., Heacock v. Commonwealth, 228 Va. 397, 323 S.E.2d 90 (1984) (distribution of

cocaine); Berkeley v. Commonwealth, 19 Va. App. 279, 451 S.E.2d 41 (1994) (abduction);

Davis v. Commonwealth, 12 Va. App. 408, 404 S.E.2d 377 (1991) (reckless driving); Spain v. Commonwealth, 7 Va. App. 385, 373 S.E.2d 728 (1988) (burglary and robbery).

While we could end our analysis there, we elect to consider whether the offenses comport with the Blockburger test because in this appeal, appellant specifically raised a challenge to his convictions under Blockburger, and the Court thinks it prudent to address his arguments in full. We hold that appellant's convictions do not violate the Double Jeopardy Clause.

In Cotton v. Commonwealth, 35 Va. App. 511, 516, 546 S.E.2d 241, 244 (2001), we considered whether felony child abuse is a lesser-included offense of felony murder, but the Court did not expressly apply a Blockburger analysis. The defendant in Cotton challenged his convictions under both statutes based on the merger doctrine, but this Court recognized that the merger doctrine had never before been applied in Virginia jurisprudence, and we declined to adopt it. Id. at 517, 546 S.E.2d at 244 ("[t]his doctrine of merger was not widely accepted . . . [and] [t]he doctrine has never been applied in Virginia"). We held that because "[f]elony child abuse requires proof that the assailant is a person responsible for the care of a child" and "[t]hat requirement of a special relationship is not an element of murder . . . felony child abuse is not a lesser-included offense of murder." Id. The Commonwealth asserts that Cotton is directly on point. However, there exists a subtle yet significant distinction between whether an offense is *lesser-included* of another offense, and when two offenses violate the Double Jeopardy Clause – the former does not require that each offense contain an element that the other does not, while the latter does require such. Therefore, we are compelled to analyze these two offenses under Blockburger.

Applying the Blockburger test and examining the language of each statute to ascertain "whether each provision requires proof of a fact which the other does not," it becomes clear that appellant's convictions do not offend the Double Jeopardy Clause. Appellant conflates the two

concepts by stating that "[t]he felony that the Commonwealth alleged was the child abuse." However, it is clear that committing a felonious act is not an *element within* the offense of felony child abuse. To obtain a conviction under the felony murder statute, the Commonwealth must prove that appellant committed some felonious act as an *independent element*. To convict under the felony child abuse statute, the Commonwealth must prove that appellant was in a special relationship with the victim, an element not found in the felony murder statute. See also Payne v. Commonwealth, 277 Va. 531, 538-41, 674 S.E.2d 835, 838-40 (2009) (holding that convictions for felony murder and aggravated involuntary manslaughter do not violate the Double Jeopardy Clause). These convictions withstand scrutiny under Blockburger because each contains an element that the other does not, and thus, appellant's double jeopardy argument fails.

CONCLUSION

Having considered appellant's assignments of error, we conclude that the admission of Dr. Omalu's report did not violate appellant's Confrontation Clause rights and that appellant's convictions do not violate the Double Jeopardy Clause. Accordingly, we affirm the judgment of the learned trial court.

Affirmed.